**Moses G. GONZALES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 665–82.**

Court of Criminal Appeals of Texas, En Banc.

March 23, 1983.

Benjamin F. Walker, Donald A. Roush, Jr., court appointed, San Antonio (David K. Chapman, San Antonio, of counsel), for appellant.

Bill M. White, Dist. Atty., Miguel Martinez, Elizabeth Taylor, Dennis J. McKnight and Jerry Rosson, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

This case involves an appeal from a conviction for possession of heroin. Punishment was assessed at life by the trial court after the jury found that appellant had twice before been convicted of felony offenses. See V.T.C.A., Penal Code, § 12.-42(d). Appellant's conviction was reversed by the Court of Appeals in an unpublished per curiam opinion by the San Antonio Court of Appeals. *Gonzales v. State* (No. 04–81–00129–CR, 6/30/82). The ground for reversal in the Court of Appeals was an

illegal search and seizure. We granted the State's petition for discretionary review on that issue.

The record reveals that petitioner was involved in a minor automobile accident in San Antonio. He was arrested by officers at the scene and heroin contained in five balloons was seized from his mouth. This evidence led to the instant prosecution and conviction.

On January 28, 1980 the trial court conducted a hearing on petitioner's motion to suppress.

Arthur D. Struxness, a police officer for the city of San Antonio, was called to testify on behalf of the State. He had been a police officer for two and a half years at the time of trial. On July 1, 1979 he was on duty from 3 p.m. to 11 p.m. Struxness had gone to the scene of an accident to work traffic and assist the officer handling the accident. While at the accident scene, he was talking with appellant. At that time Struxness observed that appellant was under the influence of some kind of intoxicant, but that he could not smell liquor on appellant's breath. At that time Struxness observed that appellant was having trouble talking and there was some object underneath his tongue. Struxness then observed a yellow and orange bright-colored object. At this time Struxness' curiousity was aroused, because as he testified:

"[D]uring my schooling at the San Antonio Police Department this was a—it was shown to us as a way of people that transported heroin. This is the way they did it. This is a way of transporting heroin. Keeping it in case they were approached by a peace officer, they could swallow it and the evidence would be no good. Wouldn't be obtainable."

Struxness then told Officer Vogel what he had observed. Vogel testified that he had been investigating the automobile accident. Vogel, while talking to appellant, also observed various colored balloons under appellant's tongue. Vogel also observed that appellant was intoxicated but could not smell any intoxicants on appellant's breath.

Vogel testified as follows concerning the significance of the balloons:

"[A]s I noticed he did have the balloons or what were—appeared to be balloons under his tongue and they were very small. Just about the size of the tip of your little finger which we had been shown before in pictures—I've talked to various narcotics officers. They advised us most heroin carriers do carry their balloons under their tongue. Carry the substance under their tongue in ballons (sic) which makes it real handy for them to swallow if they're apprehended."

Vogel and Struxness both seized appellant and administered a choke hold so that appellant could not swallow the balloons. Appellant was finally forced to spit out the balloons which were later discovered to contain heroin.

On cross-examination Struxness testified that he had never arrested a heroin addict with balloons in his mouth. No evidence on this point was elicited from Vogel.

In disposing of this case, the Court of Appeals observed that:

"It is certain that a peace officer may arrest an offender 'for any offense committed in his presence or within his view.' Tex.Code Crim.Pro.Ann. art. 14.01(b) (Vernon 1977). It is also well-settled that an officer may seize any contraband in plain view, if he has (1) a prior justification for his intrusion, (2) an inadvertent discovery of incriminating evidence, and (3) immediately apparent knowledge that the evidence before him is incriminating. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). While the officers in this case were justified in their initial intrusion upon appellant's privacy by their duty to investigate the traffic accident, and while they saw the 'colored objects' inadvertently, we hold that the State did not sufficiently prove that it was immediately apparent that the objects in appellant's mouth were or contained incriminating evidence. Aside from the officers' generalized impression that the presence of such objects

in appellant's mouth was consistent with third-hand accounts they had heard of how heroin is customarily transported, the State offered nothing to substantiate the third factor stated in *Coolidge, supra.*"

The Court of Appeals then held:

"In this case, there was testimony as to what Struxness and Vogel had been told in police academy classes, but there was no indication that either of them had ever had any personal experience with this type of 'drug packaging.' Furthermore, there were no 'suspicious facts and circumstances' that, along with such specialized knowledge, would have justified the actions taken. (Citations omitted.)"

The Court of Appeals relied on three decisions of this court for its conclusion.

In *DeLao v. State,* 550 S.W.2d 289 (Tex. Cr.App.1977), we stated the following:

"*The State urges that it is a well known fact that heroin is kept in balloons. The officer's testimony, however, does not demonstrate that he was cognizant of this 'well known' fact or immediately aware that heroin was in the balloon at the time of the seizure.* The seizure must be based on what was known by the officer at the time he acted, yet this record contains not a scintilla of evidence that the officer knew what the State now alleges in its brief on appeal is a 'well known' fact. The burden was on the State to show facts authorizing the seizure here challenged. *Had the State produced any evidence on this issue, there might have been shown a basis for its claim on appeal,* but this was not done." (Citations omitted.) (Emphasis supplied.)

Then in *Brown v. State,* 617 S.W.2d 196 (Tex.Cr.App.1981),[1] we made the following observations:

"For the plain view doctrine to apply, not only must the officer be legitimately in a position to view the object, but it must be immediately apparent to the police that they have evidence before them.

This 'immediately apparent' aspect is central to the plain view exception and is here relied on by appellant. *Howard* and *Coolidge,* both supra. In this case then, Officer Maples had to know that 'incriminatory evidence was before him when he seized the balloon.' *DeLao v. State,* 550 S.W.2d 289, 291 (Tex.Cr.App.1977)."

Subsequently in *Sullivan v. State,* 626 S.W.2d 58 (Tex.Cr.App.1982), in dealing with the seizure of narcotics from a partially unzipped pouch containing a dark brown bottle and clear plastic bag containing a white powder, we stated:

"We have, however, recognized that objects which are not inherently suspicious can become so under certain circumstances. *Thus, the State can show that the seizing officer was aware, at the time of the seizure, that contraband drugs are commonly packaged in a particular manner.* Boyd v. State, 621 S.W.2d 616 (Tex. Cr.App.1981); *Brown v. State,* 617 S.W.2d 196 (Tex.Cr.App.1981); *DeLao v. State,* 550 S.W.2d 289 (Tex.Cr.App.1977). This specialized knowledge, in combination with suspicious facts and circumstances, can sustain the State's burden of proof.

"*In this case the State did not show that Officer Roehling had such specialized knowledge.* He did state, '[U]pon seeing it in my personal and professional opinion I thought it may possibly be some kind of narcotic.' This is no more than a conclusion. It falls far short of the State's burden to show why the conclusion was reasonable at the time of the seizure.

"Furthermore, the record does not demonstrate any suspicious facts or circumstances surrounding the seizure of the pouch." (Emphasis supplied.)

 The distinction between the instant case and the three cases cited above is that the record in this case affirmatively shows that the officers had knowledge that heroin was transported in the same manner as appellant was doing. The Court of Appeals

---

1. Texas' petition for writ of certiorari granted

457 U.S. 1116, 102 S.Ct. 2926, 73 L.Ed.2d 1328.

seems to indicate that in addition to this knowledge the officers, or one of them, needed to have personal experience with this type of "drug packaging." In effect the Court of Appeals was saying that these officers could not rely on their training, but had to also have at least one encounter of the same type before their knowledge could become operative. That is not the law and should not be. A police officer is authorized to rely on his training and knowledge whether or not he gains it from personal experience in the field, formal training or on-the-job training via other, more experienced officers.

The record in the instant case reveals the fact that was missing in *DeLao*—testimony that the officers involved were cognizant of the fact that heroin is kept in balloons.

We also note that each search and seizure question must turn on the facts of each case. *Hardinge v. State,* 500 S.W.2d 870 (Tex.Cr.App.1973); *Brown v. State,* 481 S.W.2d 106 (Tex.Cr.App.1972).

▉ In the instant case the officers observed that appellant appeared to be intoxicated but could not smell alcohol on his breath. Both officers observed balloons under the tongue of appellant and had received training and information that this was a common method of transporting and concealing heroin. We also note that the location of the balloons in the mouth and under the tongue was an unusual circumstance which could only increase the suspicion that appellant was concealing a controlled substance.

We conclude that under the facts of this case the officers' observations of appellant and his attempt to conceal the balloons in his mouth, coupled with their knowledge of the use of balloons to carry heroin in the manner observed, were sufficient to authorize appellant's immediate arrest and the contemporaneous seizure of the balloons.

The judgment of the Court of Appeals is reversed and this case remanded for disposition of appellant's other ground of error on appeal.

MILLER, J., concurs in the result.

CLINTON, Judge, dissenting.

The burden here is on the State for it seeks to justify a warrantless seizure and search of the person of appellant. *Sibron v. New York,* 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968); *Coolidge v. New Hampshire,* 403 U.S. 443, 445, 91 S.Ct. 2022, 2027, 29 L.Ed.2d 564 (1971). Disclaiming the "plain view" doctrine,[1] the local prosecuting attorney has strived mightily to discharge that burden under a legal theory devised and advanced by him and contested by appellant in briefs below,[2] but so far the courts have declined to address it. We should take it up or remand the cause to the court below for further consideration.

I agree with the State that the plain view doctrine never came into play. As enunciated by the Supreme Court in *Coolidge v. New Hampshire,* supra, U.S. at 465, 91 S.Ct. at 2037:

"The problem with the 'plain view' doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal."

The opinion of the Court of Appeals implies and now this Court holds that if the officers were knowledgeable enough about an aspect of police lore (that heroin is commonly tied off in small balloons and then concealed under one's tongue), when each observed that phenomenon they saw heroin in

1. One reason for review given by the State is that the Court of Appeals erred in applying the "plain view" doctrine to the facts of this case since the warrantless search and seizure may be justified as a search incident to a valid arrest.

2. In its petition for discretionary review the State insists: "Both the State and Appellant

treated the issue as one of probable cause for a warrantless arrest. (See, Brief for the State at 2, and Brief for Appellant at 4.)." My understanding is that this Court granted the petition to decide the issue thus joined by the parties and, coincidentally, to disapprove of the manner in which the Court of Appeals treated the question.

"plain view," and acted accordingly. But the first limitation of the doctrine is that "plain view alone is never enough to justify the warrantless seizure of evidence," *id.,* at 468, 91 S.Ct. at 2039. I agree with the State that this is simply not a case for application of the doctrine.

Therefore, I respectfully disassociate myself from the opinion of the Court, and urge that we address the substantial issue which the State has raised in its petition for discretionary review: That the seizure of appellant was authorized by Article 14.01(b), V.A.C.C.P., and that the "search" of his mouth that followed was permissibly incident to the arrest. *Hernandez v. State,* 548 S.W.2d 904, 905 (Tex.Cr.App.1977); see generally *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). It must be remembered that one in a public place who is otherwise subject to a warrantless arrest has no reasonable expectation of privacy. *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).

I dissent.

TEAGUE, J., joins.