**Joe Rivera GUZMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–93–147–CR.**

Court of Appeals of Texas,
Austin.

Dec. 8, 1993.

Rehearing Overruled Jan. 12, 1994.

Mark Darrow Wilson, Austin, for appellant.

Ronald Earle, Dist. Atty., Robert Smith, Asst. Dist. Atty., Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

PER CURIAM.

The district court found appellant guilty of possessing less than twenty-eight grams of heroin and assessed punishment at imprisonment for twenty years. Texas Controlled Substances Act, Tex. Health & Safety Code Ann. § 481.115 (West 1992). In two points of error, appellant urges that the heroin was unlawfully seized and that the court erred by admitting it in evidence after overruling his motion to suppress.

On the afternoon in question, Austin police officer Troy Gay was on patrol in the 1700 block of East First Street when he saw a male pedestrian flag down a passing vehicle. As the officer watched, a passenger in this vehicle gave the man cash in exchange for an object the man took from his mouth. Believing he had witnessed an unlawful sale of narcotics, the officer arrested both parties. Officers Jimmy Cardenas and Ronald Lara responded to Gay's call for assistance.

At the hearing on appellant's motion to suppress, Cardenas testified that, after his arrest, the man on the street told the officers he knew "where we can get a lot more heroin than what we're speaking of now." The man then described "a house where he knew some other people were, at that specific moment, in possession of some heroin." Cardenas continued:

> He told us, as we had been speaking to him, that Mr. Joe Guzman was in possession of heroin at the time, and he had walked right by us. We weren't concerned with him at the time. He wasn't involved in the actual stop, you know, so he wasn't questioned during this. We looked for him, and of course, he had already walked away.
>
> So as we continued to speak to him [the informer], myself and Officer Lara, we called for two senior sergeant narcotics officers to come to the scene because at this specific time we were talking about a house which supposedly had heroin, and we were going to try [to] figure out, you know, what our next step was going to be.

Q. (By Ms. Crosby) [prosecutor] And what happened then?

A. Well, what happened next is the two other officers—senior sergeants, arrived. While we were talking to them about the information we had, I think Lara was still with the CI which was giving us the information, and he had described Joe Guzman at the time as being an older gentleman, small Hispanic male, wearing a brown leather jacket.

While I was still conversing with the other senior sergeant, about this time Officer Lara said, "There he is. There he is."

Apparently the informant had said, "There goes Joe. That's the guy I was talking to you about earlier." So apparently Mr. Guzman and another gentleman were walking by us again, and we started walking towards them, you know, in a hurriedly manner.

Q. And what did he do?

A. I told him to stop. I said, "Hey, stop." He kind of turned and looked at us and started walking a little faster.[1] So we ran up to him, and as I ran up to him, I could see him swallowing, you know, like you swallow—you could see his throat swallowing something.

Q. What did you do when you observed that?

A. When I saw that, I immediately figured he was swallowing the heroin which the other gentleman told us about. He told us that he had balloons in his mouth.

Q. And after you saw the swallowing motion and you formed your opinion as to what he was doing, what did you do next?

A. Well, I immediately went for his throat, and I grabbed him around his throat, and I told him, you know, "Spit it out. Spit it out." He kept trying—I could feel him trying to swallow again, so I squeezed a little harder, and I started to take him down, you know, face first towards the ground, telling him, "Spit it out. Spit it out." He finally spit out three small balloons.

Appellant was transported to a hospital where his stomach was pumped and one more balloon was recovered. The balloons were later found to contain heroin.

Appellant contends the heroin should have been suppressed because it was seized pursuant to and as a result of an unlawful warrantless arrest. Tex.Code Crim.Proc.Ann. art. 38.23 (West Supp.1993). The State responds that the arrest was authorized by article 14.01 of the Code of Criminal Procedure, which permits a police officer to arrest an offender without warrant when the offense is committed in the officer's presence. Tex. Code Crim.Proc.Ann. art. 14.01 (West 1977).[2]

An officer may arrest a person pursuant to article 14.01 only if there is probable cause with respect to that person. *Stull v. State*, 772 S.W.2d 449, 451 (Tex.Crim.App. 1989). Probable cause for arrest exists when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a prudent belief that the arrested person has committed or is committing an offense. *Id.* In this cause, it is undisputed that the police did not see appellant commit an overtly criminal act. But activities that are not overtly criminal may be sufficient, when coupled with an officer's prior knowledge, to establish probable cause that an offense is then occurring. *Id.* at 452; *Adkins v. State*, 764 S.W.2d 782, 786 (Tex. Crim.App.1988); *Lunde v. State*, 736 S.W.2d 665 (Tex.Crim.App.1987). Because the officers' information concerning appellant came entirely from the informer, the informer's trustworthiness is crucial to a finding of probable cause.

The officers testified that they had never seen the informer before the afternoon in question, and there is no evidence that he had previously given the police reliable information.[3] The State cites cases holding that the police may act immediately upon information furnished by a witness to a crime without first investigating the reliability and credibility of that witness. *Frazier v. State*, 480 S.W.2d 375, 378 (Tex.Crim.App.1972); *Ramirez v. State*, 658 S.W.2d 808, 810 (Tex. App.—Corpus Christi 1983), *aff'd*, 672 S.W.2d 480 (Tex.Crim.App.1984). In those cases, however, the courts were referring to a witness whose only contact with the police or criminal activity was a result of having witnessed a single criminal act, as distin-

---

1. In his testimony at trial, Cardenas stated that at this point in the confrontation, he asked appellant what he had in his mouth. Cardenas also testified at trial that it is common for heroin dealers to carry the drug in their mouths packaged in small balloons, and to swallow the balloons when approached by the police.

2. The State concedes, as it did below, that appellant was arrested when the officer seized him by the throat. *See* Tex.Code Crim.Proc.Ann. art. 15.22 (West 1977); *Burkes v. State*, 830 S.W.2d 922, 925 (Tex.Crim.App.1991); *Amores v. State*,

816 S.W.2d 407, 411–12 (Tex.Crim.App.1991); *Bell v. State*, 845 S.W.2d 454, 459 (Tex.App.—Austin 1993, no pet.).

3. The informer is truly anonymous. His name does not appear in any report and the officers could not remember it. None of the officers had seen him since the afternoon in question. Efforts by the police to locate the informer were unsuccessful, and his identity and whereabouts were unknown at the time of appellant's trial.

guished from the usual police informer who has a criminal background or enjoys the confidence of criminals. *Frazier,* 480 S.W.2d at 379; *Ramirez,* 658 S.W.2d at 810. In this cause, the informer had been arrested for selling a controlled substance only minutes before making his crucial statements to the police. We do not believe that he was a citizen witness on whom the police could rely without a further showing of credibility.

■ An officer may rely on information received from an informer if that information is reasonably corroborated by other matters within the officer's knowledge or by the officer's subsequent investigation. *Illinois v. Gates,* 462 U.S. 213, 242, 103 S.Ct. 2317, 2334, 76 L.Ed.2d 527 (1983); *Whaley v. State,* 686 S.W.2d 950 (Tex.Crim.App.1985). Gay testified that he believed the informer in this cause was credible because "he was giving us information not on Mr. Guzman, okay, not on just him alone, he was giving us other information such as other locations, other areas in town which are known to be known narcotic areas which he was—he was giving us some information on those areas." But when asked, the officer could not provide any details with regard to this other information. On this record, it cannot be said that the informer was shown to possess a degree of knowledge about drug dealing in Austin sufficient to warrant the conclusion that his tip about appellant was probably accurate.

■ As further corroborative evidence, the State cites the officers' testimony that the area in which the incident occurred was known for drug dealing. The officers did not testify, however, that this was an area frequented only or mostly by drug dealers and users. A person found in a high-crime area does not for that reason have a lesser right than others to be free from detention or arrest. *Conner v. State,* 712 S.W.2d 259, 263 (Tex.App.—Austin 1986, pet. ref'd). Officer Lara testified that he had previously seen appellant in the area, but he did not testify that he had seen appellant commit a criminal act.

Finally, the State argues that the informer's tip was corroborated by the officers' observations at the scene. The informer told the officers that Joe Guzman, a Hispanic man wearing a brown coat, was selling heroin on East First Street. Moments later, appellant, who apparently matched this description, walked past the patrol car. In an analogous case, however, this Court held that the corroboration of facts apparent to any passer-by adds little to an informer's credibility. *Id.* at 262.

The State also relies on the testimony that appellant swallowed after seeing the officers. Swallowing, of course, is a normal body function and is not usually a sign that a person is engaged in criminal activity. To conclude that appellant's swallowing corroborated the informer's tip and gave the officers probable cause to arrest him requires the application of circular reasoning: the swallowing was a suspicious act in light of the tip, and the tip was reliable because of the suspicious swallowing.

The State cites three opinions in support of its contention that appellant was lawfully arrested: *Hernandez v. State,* 548 S.W.2d 904 (Tex.Crim.App.1977); *Gonzales v. State,* 648 S.W.2d 684 (Tex.Crim.App.1983); and *Sanders v. State,* 855 S.W.2d 151 (Tex.App.—Houston [14th Dist.] 1993. no pet.). We find each to be distinguishable.

In *Hernandez,* the only issue presented was whether officers having probable cause to believe that the defendant had contraband in his mouth acted lawfully when they wrestled the defendant to the ground and choked him until he spit out four balloons. The court held that the officers' actions were proper. 548 S.W.2d at 905. Because the existence of probable cause was neither contested nor discussed in *Hernandez,* it is not on point in the instant cause.

In *Gonzales,* the court held that the police officers' observation of the defendant's attempt to conceal balloons in his mouth, together with their knowledge that balloons are used to carry heroin in the manner observed, was sufficient to authorize the defendant's immediate arrest and the contemporaneous seizure of the balloons. 648 S.W.2d at 687. In the cause before us, the officers testified that they did not see the balloons in appellant's mouth until after he was arrested.

In *Sanders,* a police officer who had made many narcotics arrests saw the defendant, a pedestrian, engage in a transaction with a passing motorist. Based on his experience, the officer believed he had witnessed a crack cocaine sale. As the officer approached the defendant, he saw him place the contents of a matchbox into his mouth. The officer knew that drug dealers commonly keep contraband in matchboxes. The court held that the officer had probable cause to arrest the defendant without a warrant, and acted properly in placing his arm around the defendant's throat to prevent the destruction of the evidence. 855 S.W.2d at 153. In the instant cause, the officers testified that they did not see appellant commit any overt criminal act, and there is no evidence that the officers saw appellant place anything in his mouth.

In *Conner,* this Court dealt with facts similar to those now before us. Police officers received information from an informer of unknown credibility that the defendant was selling contraband at a particular location. The officers went to that location and confirmed the defendant's presence, but did not see him commit any act suggestive of criminality. The officers did know that the defendant had been previously arrested for possession of cocaine and that the neighborhood in question was a high-crime area. When the officers approached the defendant, he turned and walked away. This Court held that these facts, and the reasonable inferences from these facts, did not give the officers an adequate basis for detaining the defendant. 712 S.W.2d at 262–63.

 An investigating officer's hunch, suspicion, or good faith perception is not alone sufficient to constitute probable cause for an arrest. *Stull,* 772 S.W.2d at 451. We conclude that the totality of the circumstances in this cause did not give the police probable cause to arrest appellant. Because the balloons of heroin were seized incident to, or were the fruits of, appellant's unlawful arrest, the district court abused its discretion by overruling appellant's motion to suppress. The points of error are sustained.

The judgment of conviction is reversed and the cause is remanded to the district court.