# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00267-CR

**David Edwin Wiede, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
NO. 96-0115, HONORABLE JACK ROBISON, JUDGE PRESIDING**

---

## O P I N I O N

In 1997, a jury found David Edwin Wiede guilty of possession of methamphetamine. Tex. Health & Safety Code Ann. § 481.115(d) (West 2003). The court sentenced Wiede to ten years' imprisonment; imposition of the sentence was suspended and he was placed on community supervision for ten years. In 2002, the State moved to revoke his community supervision, alleging that he had violated the terms of his community supervision by again possessing methamphetamine. Wiede pleaded not true to the allegations and moved to suppress the evidence as the product of an unlawful search of his car. The district court denied Wiede's motion, admitted the evidence, found the State's allegations to be true, and sentenced him to ten years in prison. On appeal, Wiede

challenges the revocation of his community supervision contending that the district court erred by admitting the methamphetamine into evidence because (1) the State failed to prove the chain of custody of the drugs admitted and (2) the drugs were the fruit of an unlawful search of his car. The State responds that there was sufficient proof of chain of custody and that the search was lawful because (1) there was no reasonable expectation of privacy in Wiede's wrecked vehicle in light of the statutory authority of the police to investigate a traffic accident, and (2) there was probable cause to believe the car contained contraband.

Wiede raised the same contentions in his appeal of the revocation of his community supervision in a separate adjudication in Caldwell County. *See Wiede v. State*, No. 03-03-000325-CR, 2005 Tex. App. LEXIS 452 (Tex. App.—Austin Jan. 21, 2005, pet. filed) (*Wiede I*). In *Wiede I*, the State based its motion to revoke on the same allegation of possession of methamphetamine presented in this appeal. *See id*. at *1. For essentially the same reasons stated in our opinion in *Wiede I*, we reverse the judgment of the district court and remand for further proceedings.

The record in the present case differs slightly from the record in *Wiede I*, but the basic account of Wiede's car accident and the subsequent search of his car is sufficiently set forth in our prior opinion. We will limit our discussion to those aspects of the record which differ from the evidence presented in *Wiede I* and whether those differences have an effect on our determination of the lawfulness of the search. We will also address the State's contention that Wiede's lessened expectation of privacy in his car, along with the statutory authority for the police to investigate the accident, combine to permit the search.

2

**Standard of Review**

Although the standard of review in a revocation proceeding is whether the trial court abused its discretion in finding that the State proved a violation of the conditions by a preponderance of the evidence, the evidence on which a trial court bases its determination must be properly admitted in accordance with established search and seizure law. *Wiede I*, 2005 Tex. App. LEXIS 452, at *10-11; *see Gordon v. State*, 4 S.W.3d 32, 35 (Tex. App.—El Paso 1999, no pet.) (overlapping standards of review when considering suppression of evidence in decision to revoke probation); *State v. Barnett*, 790 S.W.2d 662 (Tex. App.—Austin 1990, no pet.) (applying standard of review for suppression in revocation of probation determination). We review the district court's decision to admit the methamphetamine discovered in the contested search giving almost total deference to the district court's determination of historical facts, and we review the district court's application of search and seizure law *de novo*. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). When, as here, the district court does not make explicit findings of historical facts, we review the evidence in a light most favorable to the district court's ruling and assume that the district court made implicit findings of fact supported in the record. *Id*. We must affirm the district court's ruling on a motion to suppress if it can be upheld on any valid theory of law applicable to the case—even if the district court did not base its decision on the applicable theory. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002); *Romero v. State*, 800 S.W.2d 539, 543-544 (Tex. Crim. App. 1990).

**Relevant Facts**

Our review of the record points to three significant differences between the evidence presented in this case and that found insufficient to support a valid search in *Wiede I*. The first

3

difference is in the witness Roy Tambunga's account of Wiede's traffic accident and Wiede's actions inside his car while awaiting medical care. In *Wiede I*, Tambunga gave only a brief description of the accident and was not asked about its cause. By contrast, in this case Tambunga clarified that the truck made a left turn in front of Wiede. When asked directly by the trial judge whether the truck failed to yield the right of way, Tambunga responded:

> Truthfully, I think that you should know that when you're driving a big truck like that, you can't move very fast. I think he pulled out and didn't give enough room for the traffic, but I also think that the white car was traveling a little bit faster than the speed limit.

When compared to the record in *Wiede I*, Tambunga's testimony more clearly reflects that Wiede's collision with the truck was at least as attributable to the actions of the truck driver as to either recklessness or intoxication on the part of Wiede.

Tambunga's testimony also differs in his description of Wiede's furtive gesture. In *Wiede I*, Tambunga testified that he never saw what Wiede placed between the seat and the console of the car because Wiede's hand was closed all the way around the item. In this case, Tambunga testified that he did see what Wiede was hiding:

> It appeared to be—it was covered by his hand for the most part and it was—it appeared to be made out of plastic, clear plastic similar to a sandwich bag.

At trial, Tambunga was uncertain if he told the officers at the scene that what he saw was plastic. However, in reaching his decision to admit the evidence the trial judge observed that Tambunga must

4

have told the officer who conducted the search because he informed the officer that the first plastic bag removed from the car was too small to be the item he saw Wiede conceal.

The third relevant distinction between this record and *Wiede I* is in Officer McGuairt's account of his actions after the methamphetamine was discovered in Wiede's vehicle. When asked if he notified EMS that he had found the methamphetamine, McGuairt replied:

> Okay. I do recall. I do recall. After the substance was located—I do recall this. I did walk up to the back door of the EMS. It was still there. I remember even knocking on the door and having a paramedic come to the back door and I advised him. I didn't show them where it had been located.

McGuairt did not testify in *Wiede I* that he informed EMS of the discovery of the methamphetamine. When asked on cross examination in that case whether he had requested that EMS test Wiede for controlled substances, McGuairt stated that this would have been the duty of another officer.

Although the majority of our discussion of the search of Wiede's car in *Wiede I* remains unaffected, the differences in the record between the two hearings require additional discussion of whether the search of Wiede's car was supported by probable cause or was justified as part of the officers' community caretaking function. We will also discuss the statutory authority of the police to investigate a traffic accident and its relevance to the lawfulness of the search.

**Diminished Expectation of Privacy and Transportation Code**

The State contends that Wiede had no reasonable expectation of privacy in his car after colliding with the truck and, therefore, the search did not violate his Fourth Amendment rights. Citing a provision of the transportation code that gives police the authority to investigate traffic

5

accidents, the State argues that the owner of a vehicle involved in a collision has reason to believe the car will be removed from the roadway and a search of its contents conducted. Thus, there is no reasonable expectation of privacy in the vehicle and the search was proper.

We find that the cases cited in the State's brief discussing the diminished expectation of privacy in a vehicle do not support the proposition that there is no reasonable expectation of privacy once a vehicle is disabled in a traffic accident.[1] Clearly, much of the contents of a vehicle are in plain view and open to inspection in the course of the investigation of a traffic accident. However, the Supreme Court has consistently held that the Fourth Amendment applies to motor vehicles and that the police must have probable cause to search. *See Carroll*, 267 U.S. at 149 (warrantless search of automobile not unreasonable under Fourth Amendment if supported by probable cause); *Houghton*, 526 U.S. at 300; *see also New York v. Class*, 475 U.S. 106, 112 (1986) ("A citizen does not surrender all the protections of the Fourth Amendment by entering an automobile."). The Supreme Court recognized the diminished privacy interest and inherent mobility of motor vehicles only by eliminating the requirement that police obtain a warrant prior to searching a vehicle. *See Wyoming v. Houghton*, 526 U.S. 295, 300 (1999); *Carroll v. United States*, 267 U.S. 132, 147 (1925).

---

[1] None of the cases cited as authority for the diminished expectation of privacy in a vehicle deal with a search similar to the one in this case. *See Cardwell v. Lewis*, 417 U.S. 583, 592-93 (1974) (observation of paint scrapings on outside of car); *South Dakota v. Opperman*, 428 U.S. 364, 375-76 (1976) (inventory search); *California v. Carney*, 471 U.S. 386, 394 (1985) (no warrant required for search of motor home); *Robertson v. State*, 541 S.W.2d 608, 611 (Tex. Crim. App. 1976) (inventory search).

The transportation code also does not grant the police additional authority to search a vehicle. The State cites section 550.041(a) of the transportation code:

> A peace officer who is notified of a motor vehicle accident resulting in injury to or death of a person or property damage to an apparent extent of at least $1000 may investigate the accident and file justifiable charges relating to the accident without regard to whether the accident occurred on property to which this chapter applies.

*Id*. § 550.41(a). We find no authority construing this statue—certainly none that would permit a peace officer to search a vehicle outside of the well delineated constraints of the Fourth Amendment. In fact, our review of the history of section 550.041(a) suggests that the provision was intended merely to clarify a peace officer's authority to investigate some traffic accidents which occur on private property rather than on the public roadways. *See* Act of August 28, 1967, 60th Leg., R.S., ch. 526, 1967 Tex. Gen. Laws 1175, § 43(A) (recodified and amended 1995) (current version at Tex. Transp. Code Ann. § 550.041). Prior to its recodification in the transportation code, the statute specified that a peace officer was permitted to investigate some accidents which occurred on private property but not others:

> without regard to whether the accident occurred on a public street or highway . . . or on private property commonly used by the public such as a supermarket or shopping center parking lots . . . [i]t is specifically provided, however, that this Section shall not apply to accidents occurring on privately owned residential parking areas or on privately owned parking lots where a fee is charged for the privilege of parking or storing a motor vehicle.

*Id*. § 43(A). The caption of this provision also explains that the purpose of the act is to extend the traffic laws to certain private property. *Id*. Nothing in the statute indicates that it was intended to

7

establish an independent power to investigate accidents beyond the ordinary community caretaking functions of the police.

In light of the language and history of section 550.41(a), we cannot conclude that the statute was intended to expand the authority of the police so as to permit the search of a vehicle absent probable cause. In any event, a statutory provision can not erase Fourth Amendment protections. Although we acknowledge that an individual possesses a reduced expectation of privacy in a motor vehicle, this diminished privacy interest has been recognized in well established search and seizure law. We will not further construe this reduced expectation of privacy to dispense with the Fourth Amendment's probable cause requirement altogether when a vehicle is involved in a traffic accident. *See Class*, 475 U.S. at 112; *Wiede I*, 2005 Tex. App. LEXIS 452, at \*23-24.

**Probable Cause**

The State also asserts that the police had probable cause to believe Wiede's car contained contraband. In *Wiede I*, we concluded that the evidence presented did not demonstrate that the police had probable cause to believe that Wiede's vehicle contained evidence of a crime. *See* 2005 Tex. App. LEXIS 452, at \*24. We explained that Wiede's furtive gesture in the context of a vehicle collision amounted at most to reasonable suspicion and that the officer's duty to investigate a traffic accident would not elevate that suspicion to probable cause. *Id*. The additional facts in the present record do not change that conclusion.

The most significant difference in the record in this case with regard to probable cause is the fact that Tambunga testified that he saw clear plastic in Wiede's hand when Wiede made his furtive gesture. The trial court also found that this observation must have been communicated to the

officer conducting the search.  The State points to the comments of the trial court that, "with officers seeing dope in plastic bags all the time," Tambunga's observations represented probable cause for police to believe Wiede possessed drugs.  However, the court of criminal appeals has repeatedly held that there is nothing inherently suspicious about a plastic bag.  *See Gonzales v. State*, 648 S.W.2d 684, 686 (Tex. Crim. App. 1983); *Sullivan v. State,* 626 S.W.2d 58, 60 (Tex. Crim. App. 1981) ("a clear plastic bag is not an object that is inherently dangerous, contraband, or stolen goods"); *Duncan v. State*, 549 S.W.2d 730, 732 (Tex. Crim. App. 1977).  For a plastic bag to gain the significance attributed to it by the trial judge, there must be evidence that the seizing officer knew at the time of the search that drugs were commonly packaged in plastic bags *and* suspicious circumstances that would lead an officer to believe the bag contained drugs.  *Sullivan*, 626 S.W.2d at 60; *see Guzman v. State*, 955 S.W.2d 85, 90 (Tex. Crim. App. 1997).  Here, the State was unable to even identify the officer who conducted the search and there is nothing in the record establishing any officer's knowledge that plastic bags are ordinarily used to contain drugs.  Furthermore, there are no suspicious circumstances in the record that would lead an officer to believe that Wiede was in possession of drugs.

Tambunga's comments regarding the cause of the accident also weaken the State's argument on probable cause when compared to *Wiede I*.  Tambunga essentially dispelled any notion that Wiede's collision with the truck was evidence of intoxication.  Tambunga testified that the truck pulled out in front of Wiede's vehicle without leaving enough room for traffic and that Wiede was only traveling a "little bit" faster than the 55 or 60 mile per hour speed limit.

9

We conclude that, even when viewed most favorably to the district court's decision, the totality of the circumstances presented at the hearing did not demonstrate that the unidentified police officer had probable cause to believe that Wiede's vehicle contained evidence of a crime. The additional evidence that Tambunga may have seen a plastic bag, without any evidence in the record of suspicious circumstances or of the searching officer's experience and knowledge of the use of such materials as packaging for drugs, does not lead us to a different conclusion than in *Wiede I*. *See Guzman*, 955 S.W.2d at 90; *Sullivan*, 626 S.W.2d at 60.

**Community Caretaking**

We thoroughly discussed the application of the community caretaking doctrine to the search in *Wiede I* and concluded that it did not justify the search. Although the record in this case is somewhat different, this difference only affects our analysis of the application of the emergency doctrine component of the police's community caretaking function.[2] However, we remain convinced that the record does not demonstrate that the search of Wiede's car was conducted in furtherance of the officers' community caretaking function.

The most significant variation in the record between this case and *Weide I* is Officer McGuairt's testimony regarding his interaction with EMS. In *Wiede I*, we examined the State's contention that the search of Wiede's car was justified out of concern that Wiede might be under the influence of drugs and that producing the drugs was necessary to assist in his medical treatment. *See* 2005 Tex. App. LEXIS 452, at *26. McGuairt testified that Tambunga's description of Wiede's

---

[2] As in *Wiede I*, the record does not support a finding that an inventory search was conducted.

10

furtive gesture provoked the thought that he should inform medical personnel if what had been removed from his pocket was found to be a controlled substance. In rejecting the claim we noted:

> McGuairt did not inform the medical personnel of the possibility Wiede was intoxicated, did not tell anyone else to tell them, and did not know whether anyone told them.

*Id*. at \*31. In the present case, McGuairt did not testify that he was concerned for Wiede's medical care. He characterized the search as an investigation of the accident as well as a criminal investigation. However, McGuairt did testify that, upon locating the drugs, he showed them to EMS personnel.

Although we cannot explain the disparity in the record between these two hearings conducted within a month of each other, we find that McGuairt's actions after the discovery of the methamphetamine has little relevance in determining the motivation of the officers prior to conducting the search. A search is justified under the emergency doctrine if, at its onset, (1) the officer's actions were totally divorced from the detection, investigation, or acquisition of evidence, (2) there was an immediate, objectively reasonable belief that the search is necessary in order to protect or preserve life or avoid serious injury, and (3) the scope of the search was strictly circumscribed by the facts of the emergency. *Laney v. State*, 117 S.W.3d 854, 861-62 (Tex. Crim. App. 2003); *Gonzales v. State*, 148 S.W.3d 702, 708 (Tex. App.—Austin 2004, no pet. h.). We apply an objective standard of reasonableness and independently scrutinize the facts without regard to the subjective conclusions of the police. *Gonzales*, 148 S.W.3d at 707.

Applying this standard, we focus only on those facts known to the officers at the time of the search. Even if McGuairt's actions in showing the drugs to EMS is evidence of his concern for Wiede's safety, at its inception the search must have been based on an "objectively reasonable belief" that it was necessary to protect or preserve life or avoid serious injury. *See Laney*, 117 S.W.3d at 861-62; *Gonzales*, 148 S.W.3d at 708. As we explained earlier in this opinion and in *Wiede I*, the facts known to the police demonstrated only a reasonable suspicion that there was contraband in the car. Such speculation is insufficient to demonstrate an objectively reasonable belief under the emergency doctrine. *See Gonzales*, 148 S.W.3d at 709. Furthermore, McGuairt admitted, and the record clearly reflects that the search was conducted, at least in part, as a criminal investigation. Thus, the search was not totally divorced from the detection, investigation, or acquisition of evidence. *See Laney*, 117 S.W.3d at 861-62; *Gonzales*, 148 S.W.3d at 708. We hold that the search was not justified under the emergency doctrine.

Because the State did not establish that there was either probable cause to support the search of Wiede's vehicle, or that the search was justified under an exception to the Fourth Amendment's probable cause requirement, we hold that the district court abused its discretion by admitting the methamphetamine. The sole ground advanced in the State's motion to revoke community supervision was based on Wiede's possession of methamphetamine. Therefore, the admission of the methamphetamine into evidence was the only basis for the district court's decision to revoke Wiede's probation. The error in its admission was thus harmful.

Because the remaining issue concerning inadequate proof of the chain of custody of the methamphetamine would not require any greater relief, we need not address it.

12

**Conclusion**

The district court erred by admitting the methamphetamine into evidence. Accordingly, we reverse the district court's judgment revoking Wiede's probation and remand the cause for further proceedings not inconsistent with this opinion.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear:  Opinion by Justice Puryear;
    Dissenting Opinion by Justice Patterson

Reversed and Remanded

Filed:   April 14, 2005

Publish