NO. 07-05-0243-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



FEBRUARY 14, 2006



______________________________




ARTURO LOPEZ, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY;



NO. 094065D; HONORABLE GENE GRANT, JUDGE



_______________________________



Before QUINN, C.J., and REAVIS and HANCOCK, JJ.

OPINION


 After the trial court denied his motion to suppress, appellant Arturo Lopez pled guilty
to, and was convicted of, possession of cocaine with intent to deliver. After pleading true
to the enhancement paragraph, he was sentenced to 15 years confinement. Presenting
a sole issue, appellant asserts the trial court erred in overruling his motion to suppress
evidence based on lack of probable cause to search the locked gas compartment of his
vehicle. We affirm.

 The testimony presented at the motion to suppress hearing established the following
facts. While on patrol one evening, Officer Jeffrey Coffey stopped appellant because his
car displayed blue turn signals in violation of the Transportation Code. See Tex. Transp.
Code Ann. § 547.324(d) (Vernon 1999). Appellant was accompanied by an adult
passenger in the front seat and a young child in the back seat. Coffey approached the
driver's side and asked appellant for his driver's license and insurance card; he had
neither. A check revealed no outstanding warrants and that appellant possessed a Texas
identification card, but no Texas driver's license. While in the process of issuing a citation
to appellant, Officer Coffey approached the passenger's side of the car to determine if the
passenger could take custody of the vehicle once the stop was completed. 

 Initially, the passenger gave a false name. He quickly admitted doing so and was
arrested for failure to identify himself and placed in the back of the patrol car. Appellant
and the child in the back seat were asked to exit the car to conduct a search incident to the
passenger's arrest. Coffey began with a search of the driver's side and, as he proceeded
around the rear of the vehicle to the passenger's side, observed a "tiny bit" of a plastic
baggie in the crease around the gas cap compartment located on the rear driver's side.

 Believing he had probable cause, Coffey entered the car and pulled the release
lever to disengage the gas cap cover without appellant's consent. He observed but did not
remove at that time the plastic baggie containing what appeared to be a white powder
located inside the gas compartment. The record at the suppression hearing does not
demonstrate when, or under what circumstances, the baggie was seized.

 Presenting a sole issue, appellant challenges the denial of his motion to suppress
asserting a lack of probable cause to search the locked gas compartment. He maintains
the search was constitutionally invalid as either a search incident to the passenger's arrest
or a search pursuant to the automobile exception. The State contends the seizure of the
narcotics was legitimate under both the automobile exception and the plain view doctrine. 
The discrete question presented for our review is whether the officer had probable cause
to open the locked gas cap compartment without consent or a search warrant. 

 A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. 
Balentine v. State, 71 S.W.3d 763, 768 (Tex.Cr.App. 2002). In reviewing a trial court's
ruling on a motion to suppress, we afford almost total deference to the court's
determination of historical facts when supported by the record. Guzman v. State, 955
S.W.2d 85, 89 (Tex.Cr.App. 1997). However, for mixed questions of law and fact, which
do not fall within this category, an appellate court may conduct a de novo review of the trial
court's ruling. Hernandez v. State, 957 S.W.2d 851, 852 (Tex.Cr.App. 1998) (citing
Guzman, 955 S.W.2d at 89). In other words de novo review applies when the facts are
undisputed. State v. Jennings, 958 S.W.2d 930, 932 (Tex.App.-Amarillo 1997, no pet.).

 When, as here, the trial court failed to file findings of fact, we view the evidence in
the light most favorable to the trial court's ruling and assume the trial court made implicit
findings of fact that support its ruling as long as those findings are supported by the record. 
See Carmouche v. State, 10 S.W.3d 323, 328 (Tex.Cr.App. 2000). At a suppression
hearing, the trial court is the sole judge of the credibility of witnesses and the weight to be
given their testimony. State v. Ross, 32 S.W.3d 853, 855-56 (Tex.Cr.App. 2000). 
Additionally, questions involving reasonable suspicion and probable cause are reviewed
de novo. See Loesch v. State, 958 S.W.2d 830, 832 (Tex.Cr.App. 1997). Finally, if the
trial court's decision is correct on any theory of law applicable to the case, it will be
sustained. Ross, 32 S.W.3d at 855-56. 

 A warrantless search is per se unreasonable subject only to a few specifically
established and well-delineated exceptions. Horton v. California, 496 U.S. 128, 133, n.4,
110 S.Ct. 2301, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). A search compromises the
individual interest in privacy; a seizure deprives the individual of dominion over his person
or property. Id., (citing United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80
L.Ed.2d 85 (1984)). 

Search Incident to Arrest


 A search incident to arrest is limited to an arrestee's person and the area in his
immediate control to prevent him from obtaining possession of a weapon or concealing or
destroying evidence. Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23
L.Ed.2d 685 (1969). In New York v. Belton, 453 U.S. 454, 459-60, 101 S.Ct. 2860, 69
L.Ed.2d 768 (1981), to establish a workable rule regarding the definition of the area within
an arrestee's immediate control, the Court held that when an officer makes a lawful
custodial arrest of the occupant of a vehicle, he may, contemporaneously incident to that
arrest, search the passenger compartment of the vehicle. See also State v. Ballard, 987
S.W.2d 889, 892 (Tex.Cr.App. 1999). A lawful search also includes the contents of
containers found within the passenger compartment of the vehicle. Belton, 453 U.S. at
460-61.

 According to Coffey's testimony on direct examination, after the passenger was
arrested and placed in the patrol car, he began his search of the interior of the car on the
driver's side. During cross-examination, Coffey indicated an intent to search the
passenger's immediate wingspan. No incriminating evidence was discovered in the interior
of the car. It was after this search that Coffey noticed the plastic baggie in the crease of
the gas cap compartment and investigated further to discover the cocaine. Coffey testified
the gas cap compartment was located outside the vehicle on the rear driver's side. 
Concluding that Chimel and Belton do not validate the search of the gas cap compartment,
we next consider the automobile exception to warrantless searches.

Automobile exception


 In 1925, the Supreme Court established the automobile exception to the Fourth
Amendment's warrant requirement in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280,
69 L.Ed. 543 (1925). It held that a warrantless search of a vehicle stopped by officers with
probable cause to believe the vehicle contained contraband did not run afoul of the Fourth
Amendment. Carroll distinguished a search of dwellings or structures with a search of
movable vessels and rationalized that mobility justified a warrantless search. Id. at 151; 
see also Powell v. State, 898 S.W.2d 821, 827 (Tex.Cr.App. 1994). The Court then
addressed under what circumstances a warrantless search was reasonable and concluded
probable cause was necessary. Carroll, 267 U.S. at 156. 

 Then, in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970),
the Court found no distinction, given probable cause, between carrying out an immediate
search of a vehicle without a warrant or seizing and holding the vehicle and conducting a
delayed search. Id. at 52. In Chambers, witnesses to an armed robbery described the
vehicle, its four occupants, and some of their clothing to officers. Id. at 44. Shortly after
details were broadcast over the police radio, officers stopped a vehicle answering the
description. The occupants were arrested and the vehicle was driven to the police station
and thoroughly searched. Id. Evidence material to the robbery was discovered and
introduced at trial. Id. at 45. 

 The Supreme Court reasoned that probable cause is determined at the time of the
stop and if an immediate search is valid, so too is a later search. Id. at 51-52. The
justification to conduct a warrantless search does not vanish once the vehicle is
immobilized. See Michigan v. Thomas, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750
(1982). 

 In 1982, the Supreme Court clarified the scope of a Carroll automobile search and
held that officers may conduct a search of a vehicle that is as thorough as a magistrate
could authorize in a warrant describing the place to be searched. See United States v.
Ross, 456 U.S. 798, 800, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Ross was stopped by
officers based on a reliable informant's tip that he was selling narcotics stored in the trunk
of his car. Id. at 801. A warrantless search of the interior of the car revealed a bullet in the
front seat and a pistol in the glove compartment. Ross was arrested and handcuffed. 
Thereafter, a detective took his keys and opened the trunk of the car to reveal a closed
brown paper bag which the detective opened to discover a number of bags containing
white powder, later determined to be heroin. He replaced the bag, closed the trunk, and
drove the car to the police station. In addition to the brown paper bag, a thorough search
revealed a red zippered leather pouch which contained $3,200 in cash. Id. 

 The Court explained that the scope of a warrantless search of a vehicle is defined
by the object of the search and the places in which there is probable cause to believe it
may be found. Id. at 824. It held that if probable cause exists to believe contraband is
concealed in a lawfully stopped vehicle, officers are justified in conducting a probing search
of compartments and containers within the vehicle whose contents are not in plain view
and which may conceal the object of the search. Id. at 825. 

 A different line of cases developed regarding luggage, bags, and other closed
containers under United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538
(1977). In Chadwick, federal agents had probable cause to believe that marihuana was
contained in a 200 pound padlocked footlocker being transported by train. The locker was
carried through the train station to a waiting car. As the defendants lifted the locker into
the trunk of the car, they were arrested. The locker was seized, removed to a secure
place, and searched without a warrant. Id. at 4. The Court recognized that a person's
expectation of privacy in luggage is substantially greater than in a vehicle. Id. at 13. It
rejected the argument that the search of the footlocker was analogous to a warrantless
search of an automobile because it also had mobile characteristics and instead, reaffirmed
the principle that closed containers and packages may not be searched without a warrant. 
Id. 

 The Chadwick rule was extended to a suitcase being transported in the trunk of a
car in Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). Officers
received a tip that the defendant would be arriving at the airport with a suitcase containing
marihuana. They observed the defendant place his suitcase in the trunk of a taxi, enter
the taxi, and drive away. Id. at 755. Officers pursued and stopped the taxi and seized and
searched the suitcase without a warrant. Id. The Court was presented with the task of
determining whether the search of the suitcase fell under the Chadwick or
Chambers/Carroll rules. Id. at 757. (1) The Court found no justification for applying the
automobile exception and, instead, emphasized the heightened expectation of privacy in
personal luggage and concluded its presence in a car did not diminish the owner's
expectation. Id. at 764-65. It held the warrant requirement of the Fourth Amendment
applied to personal luggage taken from an automobile. Id. at 766.

 The dichotomy presented over the years was that if probable cause existed to
search a car, then the entire car, including any closed containers could be searched, but
if probable cause existed only as to a container in a car, the container could be held but
not searched without a warrant. Presented with the discrepancy between the Chadwick
and Ross rules and the confusion for law enforcement, in California v. Acevedo, 500 U.S.
565, 576, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), the Court revisited the different lines
of cases and held the Fourth Amendment does not compel separate treatment for an
automobile search that extends only to a container within the car. 

 The Court re-examined the privacy protections of the Chadwick-Sanders line of
cases and concluded any protection was minimal because more than likely a warrant
would be forthcoming to search the container that had been seized. Id. at 575. It
interpreted Carroll as providing one clear-cut rule to govern automobile searches and
eliminated the warrant requirement for closed containers. Id. at 580. That rule is that,
given probable cause to believe the presence of contraband or evidence, officers may
search an automobile and the containers within it without a warrant. Id. 

 The foundation for a warrantless search of an automobile is probable cause. 
Probable cause has been defined as the sum total of layers of information, and not merely
individual layers and considerations, that a reasonable and prudent man acts upon. See
Estrada v. State, 154 S.W.3d 604, 609 (Tex.Cr.App. 2005). It exists when facts and
circumstances within the officer's knowledge or about which he has reasonably trustworthy
information are sufficient to warrant a person of reasonable caution to believe that an
offense was or is being committed. (Emphasis added). See Torres v. State, No. PD-1322-04, 2005 WL 3310462, at *2 (Tex.Cr.App. Dec. 7, 2005). (2) Additionally, probable cause is
determined by the totality of the circumstances. Amores v. State, 816 S.W.2d 407, 413
(Tex.Cr.App. 1991). 

 According to the testimony at the suppression hearing, appellant had purchased the
car just two weeks earlier from a neighbor and had been in possession of it for one week. 
Officer Coffey testified he was working with the Violent Crime Reduction Task Force and
that in his knowledge and experience, appellant was stopped in a high crime area for
narcotics. (3) Regarding the "tiny bit" of a plastic baggie in the crease of the gas cap
compartment, Coffey testified his suspicion was aroused because there was no reason for
a baggie to be in that location. Based on his training and experience, he knew the gas cap
compartment was an area used for concealing narcotics. 

 On cross-examination, Coffey testified his search of the interior of the car revealed
no incriminating evidence. Additionally, he testified that neither appellant nor the
passenger appeared to be under the influence. The record establishes that no furtive
gestures were made, and there was no attempt to conceal anything at the time of the stop. 
Coffey admitted he had nothing articulable to suspect narcotics.

 Based on Coffey's testimony that appellant was stopped in a high crime area for
narcotics and that in his experience a car's gas cap compartment is an area for concealing
them, he had probable cause to believe an offense was being committed. We conclude
the trial court's implied findings are supported by the record and find no abuse of discretion
in the trial court's denial of appellant's motion to suppress.

 Plain View Doctrine-Gas Cap Compartment





 Moreover, based on the following analysis, under the plain view doctrine, the officer
had probable cause that the plastic baggie presented incriminating evidence. A thorough
search revealed only one unpublished case involving the warrantless search of a car's gas
cap compartment. See Parker v. State, No. 01-03-00365-CR, 2004 WL 909193, *2-3
(Tex.App.-Houston [1st Dist.] Apr. 29, 2004, no pet.) (not designated for publication). (4)

 It is well established that under certain circumstances officers may seize evidence
in plain view without a warrant. Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S.Ct.
2022, 29 L.Ed.2d 564 (1971). Plain view alone, however, is never enough to justify the
warrantless seizure of evidence. Id. at 468. Two requirements must be satisfied. They
are: (1) the officer must have a prior justification or otherwise properly be in a position from
which he can view the area, and (2) it must be immediately apparent to the officer that the
item may be evidence of a crime, contraband, or otherwise subject to seizure. Id. at 465-70. (5)

 The plain view doctrine involves no invasion of privacy and, thus, cannot be
considered an exception to the Fourth Amendment warrant requirement. See Texas v.
Brown, 460 U.S. 730, 738-39, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); Walter v. State, 28
S.W.3d 538, 541 (Tex.Cr.App 2000). If an item is in plain view, neither its observation nor
its seizure involves any invasion of privacy. Walter, 28 S.W.3d at 541. 

 In Brown, the Court was confronted with the "immediately apparent" requirement
and noted the phrase "was very likely an unhappy choice of words, since it can be taken
to imply that an unduly high degree of certainty as to the incriminatory character of
evidence is necessary for an application of the 'plain view' doctrine." 460 U.S. at 741. 
Brown was stopped as part of a routine driver's license checkpoint. Id. at 730. As the
officer shined his flashlight into the car, he noticed Brown take his hand out of his right
pants pocket. Between his two middle fingers he was holding an opaque, green party
balloon, knotted about one-half inch from the top. He let the balloon fall to the seat beside
his leg and reached across to open the glove compartment to look for his license. Id. The
officer noticed small plastic vials containing loose white powder and an open bag of party
balloons in the glove compartment. After Brown was asked to exit the vehicle, the officer
picked up the green party balloon and noticed a powdery substance within the tied-off
portion. After Brown was arrested, the officers discovered other contraband. Id.

 The Court of Criminal Appeals concluded the officer had to know that "incriminating
evidence was before him when he seized the balloon." See Brown v. State, 617 S.W.2d
196, 200 (Tex.Cr.App. 1981), rev'd, 460 U.S. 730 (1983). The Supreme Court, however,
concluded the opaque texture of the balloon was irrelevant and its distinctive character
spoke volumes as to its contents, especially to the trained eye of the officer. Brown, 460
U.S. at 743. Also, the officer testified he had knowledge that balloons tied in the manner
of the one possessed by Brown were used to package narcotics. Other evidence from
Brown's car suggested he was involved in possession of contraband. Id. at 743-44. 
Without resolving whether probable cause was required to invoke the plain view doctrine,
the Court decided that what was required to satisfy the immediately apparent prong was
a "practical, nontechnical" probability that incriminating evidence was involved. Id. at 742.

 Four years later, the Court held that probable cause is required to invoke the plain
view doctrine. See Arizona v. Hicks, 480 U.S. 321, 326-27, 107 S.Ct. 1149, 94 L.Ed.2d
347 (1987); Joseph v. State, 807 S.W.2d 303, 308 (Tex.Cr.App. 1991). In Hicks, a bullet
was fired through the floor of an apartment injuring a person in the apartment below. 
Officers entered Hicks's apartment to search for evidence of the shooting. One officer
noticed two sets of expensive stereo equipment that seemed out of place. Suspecting they
were stolen, he moved some of the equipment to record the serial numbers. He reported
the numbers to the station and was advised that a turntable had been taken in an armed
robbery. He seized it without a warrant. It was later determined that other serial numbers
matched stolen items and a warrant was obtained for the remaining items.

 The trial court granted the defendant's motion to suppress and the appellate court
affirmed on the basis that obtaining the serial numbers constituted an additional search
unrelated to the shooting. After the Arizona Supreme Court denied review, the State
petitioned for certiorari. The Supreme Court affirmed the appellate court's decision. Id.
at 329. It concluded that the mere recording of the serial numbers did not constitute a
seizure because it did not meaningfully interfere with Hicks's possessory interest; however,
the moving of the equipment to record the numbers did constitute a search separate and
apart from the search for evidence in the shooting. Id. at 324-25. Taking action by moving
the equipment which exposed to view concealed portions of the apartment or its contents
produced a new invasion of privacy unrelated to the prior justification that validated the
entry. Id. at 325. The Court noted that the distinction between looking at a suspicious
object and moving it even a few inches is "much more than trivial for purposes of the
Fourth Amendment." Id. "A search is a search" even if it uncovers something as
insignificant as serial numbers. Id.

 After concluding a search occurred, the Court examined whether it was reasonable
under the plain view doctrine. Id. at 326. Although the State conceded the officer only had
reasonable suspicion to believe the stereo equipment was stolen, the Court noted that the
higher standard of probable cause would have sustained a seizure of the equipment under
the plain view doctrine. The Court explained:

 [d]ispensing with the need for a warrant is worlds apart from permitting a
lesser standard of cause for the seizure than a warrant would require, i.e.,
the standard of probable cause. No reason is apparent why an object should
routinely be seizable on lesser grounds, during an unrelated search and
seizure, than would have been needed to obtain a warrant for that same
object if it had been known to be on the premises.


Id. at 327. The fact that an item comes lawfully within an officer's plain view cannot, alone,
supplant the requirement of probable cause. Id.

 Here, Officer Coffey was lawfully in a position from which to view the tiny bit of the
plastic baggie. His prior justifications for the search were a valid traffic stop and a search
incident to the passenger's arrest. He was in the process of issuing a citation to appellant
when he noticed the baggie conspicuously located in the crease of the gas cap
compartment. The immediately apparent prong does not require actual knowledge by the
officer of incriminating evidence. See Brown, 460 U.S. at 741-42. It is not essential that
the officer's belief be correct or more likely true than false. Id. at 742.

 The Court of Criminal Appeals has recognized that certain objects not inherently
suspicious can become so under certain circumstances. See generally Gonzales v. State,
648 S.W.2d 684, 686 (Tex.Cr.App. 1983) (balloons containing heroin); Sullivan v. State,
626 S.W.2d 58, 59 (Tex.Cr.App. 1981) (a partially unzipped pouch exposing a dark brown
bottle and a clear plastic bag containing a white powder); DeLao v. State, 550 S.W.2d 289,
291 (Tex.Cr.App. 1977) (a red balloon containing heroin); Duncan v. State, 549 S.W.2d
730, 732 (Tex.Cr.App. 1977) (recognizing the popularity of plastic bags as containers for
narcotics, but declining to hold that the bag itself, without more, is contraband). (6) 
Accordingly, a plastic baggie, under suspicious circumstances, can provide probable cause
to invoke the plain view doctrine. 

 As previously noted, the evidence established that appellant was stopped in a high
crime area for narcotics. Officer Coffey, in his experience, could conceive of no other
reason for a plastic baggie to be visible in the crease of the gas cap compartment other
than to conceal narcotics. Given the facts and circumstances within his knowledge, Coffey
had probable cause to believe the plastic baggie presented evidence of a crime sufficient
to satisfy the immediately apparent prong. See Torres, 2005 WL 3310462, at *2. 

 The act of opening the locked gas cap compartment on his own volition because he
knew it was a common hiding area for narcotics is analogous to the officer in Brown
knowing that balloons are frequently used to carry narcotics. The tip of the baggie exposed
in the crease of the gas cap compartment was in plain view just as the knotted balloon was
in Brown. Neither the baggie nor the balloon showed any contraband until further
investigation based on probable cause. We conclude that under the plain view doctrine,
the search of the gas cap compartment was constitutionally valid. The trial court did not
abuse its discretion in denying appellant's motion to suppress. Appellant's sole issue is
overruled. 

 Accordingly, the trial court's judgment is affirmed.


 Don H. Reavis

 Justice


 

Quinn, C.J., concurs in result.

 

Publish. 
1. Chadwick and Sanders pre-date Ross and its holding that presented with probable
cause, officers may search all compartments and containers of an automobile.
2. Overruling Castillo v. State, 818 S.W.2d 803 (Tex.Cr.App. 1991), to the extent it
required both personal knowledge and reasonably trustworthy information. (Emphasis
added).
3. The record does not disclose Coffey's training nor his years of experience as a
police officer.
4. The State relies on Parker, and appellant, in his reply brief, questions the reliance
on it and other unpublished cases. Unpublished cases have no precedential value but may
be cited as not designated for publication. Tex. R. App. P. 47.7.
5. Under Coolidge, the plain view doctrine also required that discovery of incriminating
evidence be inadvertent. That requirement was abandoned in Horton, 496 U.S. at 139-40.
6. These cases were decided before the Supreme Court's 1983 decision in Brown,
which scaled down the "immediately apparent" requirement. 460 U.S. at 741-42.