NO. 07-08-0511-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

FEBRUARY 1, 2010

_____

RANDY ERIC MORGAN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE COUNTY COURT AT LAW NO. 1 OF POTTER COUNTY;

NO. 121,814; HONORABLE W.F. "CORKY" ROBERTS, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, Randy Eric Morgan, pled guilty to possession of marihuana in an amount

of two ounces or less, a Class B misdemeanor,[1] and was sentenced to confinement in the

Potter County Detention Center for 150 days and fined $400..  In a single issue, Appellant

_____

[1] *See* Tex. Health & Safety Code Ann. § 481.121(b)(1) (Vernon 2003).

asks whether the trial court erred by denying his motion to suppress evidence of marihuana discovered in his vehicle. We affirm.

## BACKGROUND

On April 22, 2008, Appellant was charged with possession of a useable quantity of marihuana in the amount of two ounces or less. On September 12, 2008, Appellant filed a motion to suppress evidence of marihuana found in his Sport Utility Vehicle (SUV) in plain view during a safety search by Officer James Clements.

At the suppression hearing, the primary issue was whether Officer Clements had reasonable suspicion to detain Appellant for investigatory purposes prior to discovering the marihuana. The State's first witness was Officer Douglas Glick. Since 1996, Officer Glick served as the Amarillo Police Department's school liaison officer at Caprock High School. In this capacity, he spoke with students on a daily basis and, over the years, determined the credibility of certain students based upon the reliability of information they provided.

During the latter part of March and early April 2008, the school was experiencing gang-related problems. Students had been involved in fights between alleged gang members and groups from outside the school campus. On March 31, Officer Glick responded to a call describing a large fight with a gathering of approximately 200 students in the parking lot of the school's activity center. He dispersed the crowd.[2] Later, the next

---

[2]Officer Glick testified it was not uncommon for hundreds of students to gather to watch a fight.

2

day on April 1, his student sources reported witnessing a fight between Appellant (a former student) and another person in the parking lot of the activity center on March 31.

On April 2, Officer Glick received reports from students that a second fight would take place off campus at Glenwood Park. His student sources, who witnessed the fight on March 31, told Officer Glick that Appellant would be fighting on April 2 and 3. His sources asked to remain anonymous because they feared gang retaliation.

There were no reported fights on April 2. However, on April 3, Officer Glick investigated an assault on two students. One student was discovered unconscious, lying in the street. His injuries were serious and an ambulance was called. Although he suspected the students had been assaulted by Northside gang members, the victims were uncooperative. Shortly thereafter, he began hearing rumors that a big gang-related fight would be taking place after school the next day at Glenwood Park. His sources reported that Appellant would again be a participant.

When Officer Glick arrived at school on April 4, students approached him with reports that Northside gang members were coming to the school to shoot people.[3] He was told that, if he attempted to intervene, he would also be shot. After hearing the rumors, he sought out sources he knew to be credible based on his past experience. He spoke with

---

[3]Officer Glick also learned from his sources that the rumored fight at Glenwood Park was a diversion intended to draw attention away from the school where the actual fight was to occur.

students, gang members, and administrators. His sources verified the reports and indicated that Appellant and another person would be involved in the fight.

Based upon this information, Officer Glick met with school administrators and members of the Amarillo Police Department (APD). He had a sense of urgency because of the serious assault that occurred the day before and reports that weapons would be involved. He told school administrators and APD officers that he had received reports a fight would take place that day at school between Northside and Eastside gang members. He also informed them there was the threat of weapons and shootings taking place at the school. Based upon his investigation, he requested APD's assistance.

APD responded with marked and unmarked patrol cars, motorcycle units, and liaison officers from other schools. Along with high school administrators, they positioned themselves around the school perimeter along adjacent streets. From his vantage point, an assistant principal observed Appellant's SUV driving on a street immediately adjacent to the school. He radioed Officer Glick.

Because of the timing of Appellant's appearance, his reported involvement in the March 31 fight on campus, the serious assault that occurred April 3, and the consistency and frequency with which Appellant's name was mentioned by credible sources as being involved in recent violence at the high school, Officer Glick radioed officers keeping watch over the school perimeter and asked them to stop Appellant. He requested that they identify him and find out what he was doing in the area.

Officer Clements was parked on the school perimeter looking for any unusual activity that might indicate possible gang activity or fights. After receiving Officer Glick's call, he spotted and proceeded to stop Appellant's SUV. He believed the stop was gang-related and there might be weapons involved. Although Officer Clements pulled behind Appellant's SUV and activated the emergency beacons on his motorcycle, Appellant continued traveling. Officer Clements considered this to be suspicious behavior. He also noticed Appellant making furtive movements–moving his right hand rapidly as though, in his experience, Appellant may have been attempting to gain access to a weapon or hide some object.

Appellant came to a stop two blocks from the school. Officer Clements approached the SUV and removed Appellant from the vehicle. Because he was concerned Appellant's furtive movements may have been intended to conceal a weapon, he handcuffed Appellant and patted him down. According to Officer Clements, Appellant was not placed under arrest but was merely being detained for further investigation. After Officer Clements turned Appellant over to Officer Ed Carroll, he returned to the SUV to search the interior driver's side for weapons and observed a clear plastic baggie tucked between the front driver's seat and the console. He also observed a marihuana cigarette in the SUV's door handle.

Officer Carroll walked Appellant to the patrol car and asked Appellant's name. Appellant identified himself and then, without questioning, said, "I'll be honest with you, I

have marihuana in the vehicle." After placing Appellant in the backseat of the patrol car, Officer Carroll approached Officer Clements who had already located the marihuana in the SUV. Officer Carroll returned to the patrol car and placed Appellant under arrest for possession of marihuana. He asked Appellant why he was at the high school and Appellant responded he was there to pick up a friend.[4] Subsequently, the trial court denied Appellant's motion to suppress.

On November 21, 2008, Appellant entered his guilty plea in open court while preserving his right to appeal the trial court's ruling on his motion to suppress. Thereafter, he was sentenced and this appeal followed.

**Discussion**

Appellant asserts Officer Clements improperly detained him for investigatory purposes because the officers lacked reasonable suspicion to detain him. He contends that, because his initial detention was improper, the trial court should have excluded the marihuana discovered in his SUV as the "fruit of the poisonous tree."

---

[4]There was no indication in the record whether this statement was made prior to receiving warnings regarding his right against self-incrimination. Neither was there any objection to Officer Carroll's testimony and the voluntariness of Appellant's statements were not challenged at the suppression hearing.

6

## I.       Standard of Review

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002); *Hudson v. State*, 247 S.W.3d 780, 783 (Tex.App.–Amarillo 2008, no pet.).   In reviewing a trial court's determination of the reasonableness of a temporary investigative detention, appellate courts use a bifurcated standard of review.   *Ford v. State,* 158 S.W.3d 488, 493 (Tex.Crim.App. 2005).  Almost total deference is given to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor.  *St. George v. State,* 237 S.W.3d 720, 725 (Tex.Crim.App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). The same level of deference is also afforded to a trial court's ruling on application of law to fact questions or mixed questions of law and fact if the resolution of those questions also turns on an evaluation of credibility and demeanor.  *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex.Crim.App. 2006).  However, if mixed questions of law and fact do not fall within these categories, appellate courts may conduct a *de novo* review of the trial court's ruling. *Guzman,* 955 S.W.2d at 87.

When, as here, no findings of fact were requested nor filed, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record.   *See State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000).   If the trial court's decision is correct on any theory of the law

7

applicable to the case, it will be sustained. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex.Crim.App. 2003); *Ross*, 32 S.W.3d at 855-56. Further, the legal question of whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion underlying an investigatory detention is reviewed *de novo. See State v. Sheppard,* 271 S.W.3d 281, 286-87 (Tex.Crim.App. 2008); *Kothe v. State,* 152 S.W.3d 54, 62-63 (Tex.Crim.App. 2004).

Further, we interpret Appellant's rights under Article I, Section 9 of the Texas Constitution consistently with the interpretation of his Fourth Amendment rights under the federal constitution by the United States Supreme Court and the Texas Court of Criminal Appeals. *Sargent v. State*, 56 S.W.3d 720, 724 n.2 (Tex.App.–Houston [14th Dist.] 2001, pet. ref'd). Accordingly, the standard for investigative stops is the same under the Texas Constitution as under the United States Constitution. *See Rhodes v. State*, 945 S.W.2d 115, 117 (Tex.Crim.App.), *cert. denied*, 552 U.S. 894, 118 S.Ct. 236, 139 L.Ed.2d 167 (1997).

The threshold question we must determine is whether Officer Clements's stop of Appellant was an investigatory detention or an arrest because the nature of the detention determines the constitutional parameters which apply to its legality. An investigatory detention is distinguishable from a custodial arrest, and the use of handcuffs does not automatically convert a temporary detention into a Fourth Amendment arrest. *Sheppard,* 271 S.W.3d at 289. An investigatory detention, to be constitutionally valid, may be founded upon a reasonable, articulable suspicion that the person detained is connected with

8

criminal activity, whereas an arrest, to pass constitutional muster, must be supported by the greater conclusiveness of probable cause to believe that the person detained has committed or is committing an offense. *Amores v. State*, 816 S.W.2d 407, 411 (Tex.Crim.App. 1991).

## II. Investigative Detention

A police officer may stop and briefly detain a person for investigative purposes if, under the totality of the circumstances, the officer has reasonable suspicion supported by articulable facts that the person detained is, has been, or soon will be engaged in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Ford, 158 S.W.3d at 492. An investigative detention occurs when an individual is confronted by a police officer, yields to the officer's display of authority, and is temporarily detained for purposes of an investigation. *Johnson v. State*, 912 S.W.2d 227, 235-36 (Tex.Crim.App. 1995). Whether reasonable suspicion exists is determined by considering the facts known to the officer at the moment of detention, and simple subjective good faith alone is not enough. *Davis v. State,* 947 S.W.2d 240, 243 (Tex.Crim.App. 1997).

Prior to initiating an investigative detention, an officer must have reasonable suspicion to believe that an individual is involved in criminal activity. *Balentine*, 71 S.W.3d at 768. The "reasonableness" of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific, articulable facts, which, when taken together with rational inferences from those facts, lead

9

him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *Ford,* 158 S.W.3d at 492.[5] There is no definitive bright-line test in evaluating whether an investigative detention is unreasonable. *United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). Common sense and ordinary human experience govern over rigid criteria. *Id.*

Whether there is a reasonable suspicion is dependent on both the content of the information possessed by an officer and its degree of reliability. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Both "quantity and quality" must be taken into account and considered in the "totality of the circumstances – the whole picture". *Id.* (quoting *United States v. Cortez,* 449 U.S. 411, 417 (1981)). The factual basis for an investigative detention need not arise solely from the officer's personal observation but may derive from the collective knowledge of other officers when there has been some degree of communication between those officers; *Woodward v. State*, 668 S.W.2d 341, 344 (Tex.Crim.App. 1982) (op. on reh'g), *cert. denied,* 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985), or information supplied by another person such as an informant. *Brother v. State*, 166 S.W.3d 255, 259-60 (Tex.Crim.App. 2005), *cert. denied,* 546 U.S. 1150, 126 S.Ct. 1172, 163 L.Ed.2d 1129 (2006); *Martinez v. State*, 261 S.W.3d 773, 776

---

[5]In *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), the United States Supreme Court stated:

> [T]he requirement of reasonable suspicion is not a requirement of absolute certainty: "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment. . . ."

469 U.S. at 346 (quoting *Hill v. California*, 401 U.S. 797, 804, 92 S.Ct. 1106, 28 L.Ed.2d 484 (1971)).

(Tex.App.–Amarillo 2008, pet. ref'd). Even circumstances "which when viewed independently of each other could be indicative of innocent action" may give rise to reasonable suspicion; *State v. 1998 Toyota Land Cruiser, Oklahoma Tag CMN-633 VIN JT3HT05J9W0007179*, 277 S.W.3d 88, 91 (Tex.App.–Amarillo 2009, no pet.), and the possibility of an innocent explanation does not deprive the officer of the capacity to entertain reasonable suspicion of criminal activity. *See T.L.O.*, 469 U.S. at 346; *Toyota Land Cruiser*, 277 S.W.3d at 91.

While a tip by an unnamed informant of undisclosed reliability may justify the initiation of an investigation, such a tip, standing alone, will rarely establish the requisite level of reasonable suspicion necessary to justify an investigative detention. *Florida v. J.L.*, 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). However, a citizen informant's information may provide an officer with reasonable suspicion if the information is corroborated by further indicia of reliability, i.e., some additional facts from which a police officer may reasonably conclude that the tip is reliable and a temporary detention justified. *Brother*, 166 S.W.3d at 258-59 (citing *Alabama v. White*, 496 U.S. at 330-31).

Corroborating information that can give rise to reasonable suspicion includes details that accurately predict the subject's future behavior, link the subject to the alleged criminal activity, or give a particularized and objective reason to suspect the subject. *Glenn v. State,* 967 S.W.2d 467 (Tex.App.–Amarillo 1998, pet. dism'd). A citizen's tip deserves great weight when there is a detailed description of the wrongdoing along with a statement that the event was witnessed firsthand; *Illinois v. Gates*, 462 U.S. 213, 234, 103 S.Ct. 2317,

11

76 L.Ed.2d 527 (1983), when a citizen puts their self in a position to be held accountable for their intervention; *State v. Stolte*, 991 S.W.2d 336, 341 (Tex.App.–Fort Worth 1999, no pet.), the citizen is not connected with law enforcement or a paid informant; *State v. Sailo*, 910 S.W.2d 184, 188 (Tex.App.–Fort Worth 1995, pet. ref'd), or there is sufficient evidence that an informant's information is reliable based on a past relationship with law enforcement. *See Adams v. Williams,* 407 U.S. 143, 146-47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Dixon v. State*, 206 S.W.3d 613, 616-17 (Tex.Crim.App. 2006).[6] Although there is no *per se* rule requiring independent police corroboration; *Dixon,* 206 S.W.3d at 618 (collected cases cited therein), when the reliability of the information is increased, less corroboration is necessary. *Stolte*, 991 S.W.2d at 341.

Here, Officer Glick received reports from students of future gang-related fights possibly involving weapons during the end of March and early April. Following an incident on March 31, Officer Glick met with students whom he believed were credible and reliable based on prior information he had received from them. His student sources identified Appellant as one of the persons that students had gathered to watch fight in the parking lot of the school's activity center. His sources also reported there would be another fight on April 3 and Appellant would be involved.

---

[6]The same factors applicable when establishing probable cause are also relevant in the reasonable suspicion context except that a lesser showing of suspicion is required. *State v. Fudge,* 42 S.W.3d 226, 239 (Tex.App.–Austin 2000, no pet.) (citing *White*, 496 U.S. at 328-29). When reviewing an investigative detention under either state or federal law, it is accepted that "law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest." *Johnson*, 912 S.W.2d at 235 (quoting *Crockett v. State*, 803 S.W.2d 308, 311 (Tex.Crim.App. 1991)).

As reported, on April 3, two students were assaulted after lunch and one student sustained serious injuries. Although Officer Glick suspected the assaults were gang-related, neither victim would cooperate. Afterwards, he began receiving reports that a gang-related fight was going to occur the next day, April 4, and Appellant would again be involved.

When Officer Glick arrived at school on April 4, students approached him saying that gang members were coming to the school with weapons to shoot people, including Officer Glick, if he got in the way. His credible student sources verified the reports and also reported Appellant would be involved. At this point, Officer Glick believed he had a credible threat of violence at the school accompanied by threats of weapons and shootings–and Appellant would be involved. Based upon these reports, he coordinated a response among school administrators and the APD.

When, as predicted, Appellant was subsequently identified driving down a street bordering the school, Officer Glick believed his appearance at the school coupled with recent events that week and coinciding with reports of a credible threat of violence involving Appellant, gave him reasonable suspicion to request that Appellant be stopped, identified, and questioned regarding his purpose for being in the area. He radioed his request to APD officers and Officer Clements initiated a stop of Appellant's SUV. Under these circumstances, we cannot say that Officer Glick's assessment of the situation in light of his

specialized training and familiarity with the customs of the school was unreasonable. *See United States v. Arvizu*, 534 U.S. 266, 276, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).[7]

In evaluating whether there is a reasonable particularized and objective basis for detaining a person suspected of wrongdoing for further investigation, government officials must consider the totality of circumstances.[8] Because Officer Glick's information was based on face-to-face encounters with students,[9] some of which were known to have provided credible and reliable information in the past,[10] we find that Officer Glick had a

---

[7]Officer Glick served as school liaison officer at the school for twelve years. "School officials have a specialized understanding of the school environment, the habits of students, and the concerns of the community, which enables them to 'formulat[e] certain common-sense conclusions about human behavior.'" *United States v. Sokolow*, 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *United States v. Cortez*, 499 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

[8]While making a determination regarding the more stringent Fourth Amendment standard of probable cause to search, the Texas Court of Criminal Appeals described the totality-of-the-circumstances test as follows:

> [The] totality-of-the-circumstances approach is far more consistent with our treatment of probable cause than is any rigid demand that specific "tests" be satisfied by every informant's tip. Perhaps the central teaching of our decisions bearing on the probable-cause standard is that it is a "practical, nontechnical conception." In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. . . .

*Dixon*, 206 S.W.3d at 618 n.20 (quoting *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

[9]A tip provided by an unidentified "known student" may be relied on as added indicia of reliability permitting a school official to rely on the tip. *In re K.C.B.,* 141 S.W.3d 303, 307 (Tex.App.—Austin 2004, no pet.). Moreover, Texas courts have distinguished between anonymous telephone informants and informants that personally approach officers. *See, e.g., State v. Garcia*, 25 S.W.3d 908, 912-13 (Tex.App.–Houston [14th Dist.] 2000, no pet.). "Unlike a person who makes an anonymous telephone call, an individual presenting himself to the officer in person . . . puts himself in a position to be held accountable for his intervention; thus, the reliability of the information he provides is increased." *Id.* at 913.

[10]*See Adams*, 407 U.S. at 146-47 (held that informant personally known to officer provided "enough indicia of reliability" to create probable cause); *Dixon*, 206 S.W.3d at 616-17 (held that informant personally

14

reasonable suspicion to believe Appellant was on the school's perimeter for the purpose of engaging in criminal activity that might involve weapons and shootings.[11] Further, there is no evidence of record indicating Officer Glick's student sources were connected to law enforcement or paid informants.

That Appellant was detained on a public street bordering the school rather than on the school's campus is of no moment. In light of the recent events at the school as well as the reported threats of gang-related violence, weapons, and shootings with Appellant being identified by credible sources as one being involved, Appellant's presence on the school's immediate perimeter on the day the violence was to occur required immediate action to assure the safety of students. The officers did not need to wait until Appellant "crossed the line" to detain him.

Having determined Officer Clements's investigative detention of Appellant was reasonable under the circumstances, we find the trial court did not abuse its discretion by finding the marihuana Officer Clements discovered in plain view in the SUV was admissible at trial and denying Appellant's motion to suppress. Appellant's sole issue is overruled.

## Conclusion

known to officer as credible and reliable based upon past information provided "enough indicia of reliability" to create probable cause).

[11]Officer Glick's sources had verified approximately 200 students gathered to witness a fight involving Appellant on March 31, predicted the violent assault that occurred on April 3 and also predicted that Appellant, a non-student, would be present at the school on April 4 to participate in a gang-related fight involving weapons and shootings. That a tip contains "predictive information" capable of verification is also indicia of reliability. *See Fudge*, 42 S.W.3d at 239-40.

15

The trial court's judgment is affirmed.


Patrick A. Pirtle
                                                            Justice

Publish.