# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00276-CR

**Donald Ray King, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT NO. 15-1737-K26, HONORABLE DONNA GAYLE KING, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following the denial of his motion to suppress evidence, appellant Donald Ray King pleaded guilty to the offense of possession of a controlled substance, methamphetamine, with intent to deliver. *See* Tex. Health & Safety Code § 481.112(e). The district court sentenced King to 55 years' imprisonment. In five issues on appeal, King asserts that the district court abused its discretion in denying his motion to suppress and contends that the judgment of conviction should be modified to correct an erroneous description of the crime for which he was convicted. We will modify the judgment of conviction to correct its erroneous description of the offense and affirm the judgment as modified.

BACKGROUND

According to the evidence presented at the hearing on the motion to suppress,[1] on the night of July 25, 2015, Officer Alex Wakim of the Cedar Park Police Department initiated a traffic stop on a vehicle occupied by Pamela Flowers, the driver, and King, the sole passenger. Following the stop, Officer Wakim "requested and was granted written consent to search the vehicle from Flowers." During that search, Wakim and another officer, Erik Detlefsen of the Cedar Park Police Department, found approximately 234 grams of methamphetamine inside the vehicle. The affidavit reflects that the methamphetamine was found in three plastic bags contained within a "Caselogic" satchel that was located in a "storage compartment under the back driver's seat." At some point "during his investigation," Wakim also seized an "LG Smartphone" that was "found to be in the possession of [King] and [Flowers] and was believed to be used by King and Flowers." Wakim then gave the phone to Sergeant William Mauer, also of the Cedar Park Police Department, who had assisted the officers with the investigation. The seizure and subsequent search of the LG cell phone is the focus of this appeal.[2]

The record further reflects that after the phone was seized, it was placed in storage at the Cedar Park Police Department, where it remained until December 2015, when the contents of the phone were searched pursuant to a warrant. In January 2017, King filed a motion to suppress the evidence obtained from that search, contending, among other grounds, that neither the seizure nor

---

[1] Specifically, the district court admitted into evidence a March 2017 search warrant and supporting affidavit that authorized the search of a cell phone that belonged to King.

[2] A second cell phone, belonging to Flowers, was also seized during the search by Corporal Melissa Fautheree, also of the Cedar Park Police Department. The legality of the seizure of Flowers's phone was not an issue at the suppression hearing.

the search of the phone were supported by probable cause. A second search warrant was issued in March 2017, and the phone was searched again. King then filed a second motion to suppress, focused on the legality of the second search.[3]

During the suppression hearing, King made several arguments for suppressing the evidence obtained from the search of the phone, including that (1) the initial warrantless seizure of the phone was not supported by probable cause; (2) the delay between the seizure of the phone in July 2015 and the issuance of the second search warrant in March 2017 was unreasonable; (3) the search-warrant affidavit did not establish probable cause to believe that the phone would contain evidence of a drug crime; and (4) the affidavit contained deliberate misstatements such that the court should hold a *Franks* hearing to determine the truth or falsity of the representations made in the affidavit. *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978) (holding that "where the defendant makes a substantial preliminary showing that a false statement . . . was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request"). The district court denied King's request for a *Franks* hearing and concluded that there was "probable cause [] within the four corners of the affidavit to [] conduct the search of the phone requested to be searched." Following further argument from the parties, the district court also concluded, "after [its] review of . . . the March search warrant and the supporting affidavit," that there was "probable cause to believe that the phone was an instrument of a crime" so as to justify its warrantless seizure.

---

[3] At the suppression hearing, the State indicated that it was relying solely on the second warrant to support the legality of the search. The State explained, "We're going to be proceeding on the second search warrant without any regard to what happened in the first search warrant . . . ."

3

After also hearing evidence as to the legality of the initial traffic stop (an issue that King has not raised on appeal), the district court denied King's motion to suppress. King subsequently pleaded guilty to the offense of possession of methamphetamine with intent to deliver and was sentenced to 55 years' imprisonment as noted above. This appeal followed.

**STANDARD OF REVIEW**

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). "The record will be viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *Id*. (citing *Dixon*, 206 S.W.3d at 590; *Montgomery v. State*, 810 S.W.2d 372, 391–92 (Tex. Crim. App. 1991) (on reh'g)). Moreover, a trial court's ruling on the motion will be upheld if it is correct under any theory of law applicable to the case, regardless of whether the trial court based its ruling on that theory. *Id*.

Additionally, "[w]e review a motion to suppress evidence under a bifurcated standard." *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). "Under the appellate standard of review on Fourth Amendment claims, an appellate court is to afford almost total deference to the trial court's determination of historical facts, and of application-of-law-to-fact issues that turn on credibility and demeanor, while reviewing de novo other application-of-law-to-fact issues." *State v. Ford*, 537 S.W.3d 19, 23 (Tex. Crim. App. 2017) (citing *Guzman*, 955 S.W.2d at 89). In other words, the prevailing party in the trial court "gains the benefit of deference on factual findings made in [its]

4

favor." *Id.* "However, whether the facts, as determined by the trial court, add up to reasonable suspicion or probable cause is a question to be reviewed de novo." *Id.*

## ANALYSIS

**Probable cause to seize and search the cell phone**

We address King's first and third issues together, as they both concern the district court's probable-cause determinations. In his first issue, King asserts that the officers lacked probable cause to seize his phone without a warrant. In his third issue, King contends that the second search-warrant affidavit did not establish probable cause to believe that the phone would contain evidence of a drug crime so as to authorize the search of the phone.

We begin with the warrantless seizure of the phone. The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The "central requirement" of the Fourth Amendment is "reasonableness." *Illinois v. McArthur*, 531 U.S. 326, 330 (2001) (citing *Texas v. Brown*, 460 U.S. 730, 739 (1983)). "In the ordinary case, the [United States Supreme] Court has viewed a seizure of personal property as per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701 (1983). However, "there are exceptions to the warrant requirement." *McArthur*, 531 U.S. at 330. "When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions,

5

or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable." *Id.*

"To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). "A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant." *Id*. (citing *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002)). "The burden then shifts to the State to prove the reasonableness of the seizure." *State v. Robinson*, 334 S.W.3d 776, 779 (Tex. Crim. App. 2011). "[T]he warrant requirement is not lightly set aside, and the State shoulders the burden to prove that an exception to the warrant requirement applies." *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007); *see also United States v. Robinson*, 414 U.S. 218, 243 (1973) ("Exceptions to the warrant requirement are not talismans precluding further judicial inquiry whenever they are invoked, but rather are 'jealously and carefully drawn.'" (internal citations omitted)). "To meet its burden, the State may present the specific facts known to the officer at the moment the seizure occurred." *State v. Woodard*, 341 S.W.3d 404, 411–12 (Tex. Crim. App. 2011).

The State stipulated in the court below that the phone was seized without a warrant. Thus, the State "shouldered the burden" at the suppression hearing to prove that the warrantless seizure fell within an exception to the warrant requirement. In this case, the exception on which the State relies is the "plain view" doctrine. "Under that doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the

6

officers have a lawful right of access to the object, they may seize it without a warrant."[4] *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993); *see State v. Rodriguez*, 521 S.W.3d 1, 18 (Tex. Crim. App. 2017); *State v. Dobbs*, 323 S.W.3d 184, 187 (Tex. Crim. App. 2010). "If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object—i.e., if 'its incriminating character [is not] "immediately apparent,"'—the plain-view doctrine cannot justify its seizure." *Dickerson*, 508 U.S. at 375 (internal citations omitted). The United States Supreme Court has emphasized that for the plain-view doctrine to apply, "probable cause is required." *Arizona v. Hicks*, 480 U.S. 321, 326 (1987). Any lesser requirement "would be to cut the 'plain view' doctrine loose from its theoretical and practical moorings," including "the desirability of sparing police, whose viewing of the object in the course of a lawful search is as legitimate as it would have been in a public place, the inconvenience and the risk—to themselves or to preservation of the evidence—of going to obtain a warrant." *Id*. at 326–27. In other words, under the plain-view doctrine, "seizures of effects that are not authorized by a warrant are reasonable only because there is probable cause to associate the property with criminal activity." *Soldal v. Cook Cty.*, 506 U.S. 56, 69 (1992).

Probable cause for a warrantless seizure "requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief

---

[4] We note that it is undisputed that, as a result of Flowers's consent to the search of the vehicle, the officers were in a lawful position from which to view the cell phone and had a lawful right of access to it. The parties join issue only as to whether the "incriminating character" of the cell phone was "immediately apparent" to the officers.

be correct or more likely true than false." *Brown*, 460 U.S. at 742 (internal citation omitted). "When determining probable cause, an appellate court considers the totality of the circumstances" and "must view the evidence in the light most favorable to the trial court's ruling." *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). Moreover, "the training, knowledge, and experience of law enforcement officials is taken into consideration." *Id*. Reviewing courts allow officers "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). "Because probable cause 'deals with probabilities and depends on the totality of the circumstances,' it is 'a fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal rules.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (internal citations omitted). "It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44 n.13 (1983)). "Probable cause 'is not a high bar.'" *Id*. (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

Nevertheless, probable cause must exist "at the moment" the seizure is made, *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Woodard*, 341 S.W.3d at 411–12; *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009), and probable cause must be "based on facts and circumstances within the officer's personal knowledge or of which the officer has reasonably trustworthy information," *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). Moreover, "probable cause must be based on facts, not opinions" or "conclusory statements." *Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 493. And "it is imperative that the facts be judged against

8

an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); *see State v. Duran*, 396 S.W.3d 563, 569 (Tex. Crim. App. 2013). When "[t]he record reveals an absence of any facts allowing an appellate court to determine the circumstances upon which [the officer] could reasonably conclude" that the challenged action was appropriate, "a court has no means in assessing whether [the officer's] opinion was objectively reasonable." *Ford*, 158 S.W.3d at 493.

We must also be mindful that in this case, the property subject to the warrantless seizure was a cell phone, a device that the United States Supreme Court has described as "such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude [it was] an important feature of human anatomy." *Riley v. California*, 134 S. Ct. 2473, 2484 (2014); *see also Carpenter v. United States*, 138 S. Ct. 2206, 2214, 2220 (2018) (recognizing that cell phones contain "vast store of sensitive information" and that "carrying one is indispensable to participation in modern society"). And the Court of Criminal Appeals has observed that "a cell phone is unlike other containers as it can receive, store, and transmit an almost unlimited amount of private information" that "involve[s] the most intimate details of a person's individual life, including text messages, emails, banking, medical, or credit card information, pictures, and videos." *State v. Granville*, 423 S.W.3d 399, 408 (Tex. Crim. App. 2014). Because such information may or may not be "associated with criminal activity," depending on the circumstances, the State must prove on a case-by-case basis that the incriminating nature of the cell phone was immediately apparent to the officers who seized it, based on the facts and circumstances known to the officers at the moment the

9

phone was seized. *See, e.g.*, *Cruse v. State*, No. 01-13-00077-CR, 2014 Tex. App. LEXIS 7909, at

*8–9 (Tex. App.—Houston [1st Dist.] July 22, 2014, pet. ref'd) (mem. op., not designated for

publication) (incriminating nature of cell phones seized during sexual-assault investigation

immediately apparent when officer testified that, prior to seizing phones, he had interviewed

complainant and learned from her that cell phones had been used to record her assault); *Quinonez*

*v. State*, Nos. 05-11-00868-CR & 05-11-00925-CR, 2012 Tex. App. LEXIS 4770 at *7–8 (Tex.

App.—Dallas June 14, 2012, pet. ref'd) (op., not designated for publication) (incriminating nature

of cell phone seized during sexual-assault investigation immediately apparent when officer testified

that, prior to seizure, "ping" originating from complainant's cell phone was traced to defendant's

vehicle and phone "appeared to have been recently broken" when officer found phone inside

vehicle); *see also United States v. Conlan*, 786 F.3d 380, 388 (5th Cir. 2015) (incriminating nature

of laptops and cell phones found in hotel room during stalking investigation immediately apparent

when officer who had ordered seizure of items "was aware of [the defendant's] harassing electronic

communications"); *United States v. Key*, 162 F. Supp. 3d 674, 679 (N.D. Ill. 2016) (incriminating

nature of cell phone found in motel room during prostitution investigation immediately apparent

when officer testified that "in his experience, individuals posting prostitution advertisements on [a

website] use their cellphone numbers as contact information" and that officer "commonly seized

cellphones in raiding hotel rooms related to these investigations").

The record in this case supports the district court's finding that the State made the

necessary showing here. At the suppression hearing, the State offered into evidence the March 2017

search warrant and supporting affidavit that had been used to authorize the search of the phone. The

affidavit was prepared by William Mauer, who averred that he was "employed as a Narcotics Detective Sergeant with the Cedar Park Police Department," that his "full-time duties [were] to investigate narcotic-related crimes [including] possession of, distribution of, and trafficking of narcotics," that he had "two years of narcotic unit supervisory, prior patrol officer and patrol supervisory experience with numerous cases involving narcotics offenses," and that he had "received over 150 formal training hours in the investigation of narcotic-related offenses." In this case, Mauer recounted, he "was contacted by telephone and requested to assist officers with this narcotics investigation" and had "arrived on scene while officers were completing the search of the vehicle." According to Mauer, the phone "was taken from the scene" of the traffic stop and "was found to be in the possession of [King] and [Flowers] and was believed to be used by King and Flowers." Mauer further averred that he "was provided by Officer Wakim with [King's phone] at the scene, which Officer Wakim stated he located during his investigation." This investigation, Mauer explained, included a consensual search of Flowers's vehicle, during which officers discovered a satchel that "contained numerous small plastic baggies, a black digital scale, a small amount of mari[h]uana, measuring spoons, rolling papers, and three (3) bags of a crystal-like substance" that field-tested positive for methamphetamine. "The total weight of the crystal-like substance in the three baggies," Mauer added, "was approximately 234.3 grams." Mauer also recounted that Wakim had told him that he had found "a large sum of U.S. Currency on King's person," in the amount of $1,371.27. Mauer explained that he "knows from numerous prior narcotics investigations that narcotic dealers frequently keep baggies, measuring devices such as spoons, and digital scales about their person in order to facilitate narcotics transactions" and that the presence of these items, combined with

11

"large sums of U.S. Currency about a person . . . suggest that [the currency] is proceeds of narcotics trafficking."

Mauer further averred that he had "been involved in numerous cases where people were arrested for possessing large amounts of controlled substances," that "[t]ypically, those individuals had cellular telephones on or about their persons when they were arrested," and that these individuals will "typically" have evidence of narcotics transactions contained in their cell phones. According to Mauer, this evidence included:  "listings of incoming and outgoing calls made from and to persons who either sell drugs to or purchase drugs from the possessor of the cell phone"; "listings of names and contact information of persons [who] they either buy drugs from or sell drugs to"; "photographs of themselves and others in the possession of drugs and other contraband"; "communication to arrange for the sale and purchase of controlled substances through applications"; and "text messages from and to persons who either sell drugs to the possessor of the cell phone or persons that this person sells drugs to."

The above evidence, when considered in its totality, supports an implied finding by the district court that it would have been immediately apparent to Sergeant Mauer, based on his training and experience, that a cell phone discovered contemporaneously with and in the same vehicle as approximately 234 grams of methamphetamine and drug paraphernalia would be "associated with criminal activity." *See, e.g.*, *Brown*, 460 U.S. at 742–43; *Dobbs*, 323 S.W.3d at 187–89; *Wiede*, 214 S.W.3d at 26–28; *Gonzales v. State*, 648 S.W.2d 684, 686–87 (Tex. Crim. App. 1983); *Lopez v. State*, 223 S.W.3d 408, 417 (Tex. App.—Amarillo 2006, no pet.); *Nichols v. State*, 886 S.W.2d 324, 326 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd); *see also Key*,

12

162 F. Supp. 3d at 679 (concluding that officer's training and experience conducting prostitution investigations provided him with probable cause to believe that cell phone found in motel room would be associated with prostitution). However, King asserts that "Sergeant Mauer's training and experience has no bearing on whether the phone's incriminating nature was immediately apparent because Mauer did not seize the phone, nor was he part of the investigation when it was seized." But it would not have been outside the zone of reasonable disagreement for the district court to have found otherwise, based on the "collective knowledge" doctrine. This doctrine provides that the officer who initiates the seizure "need not be personally aware of every fact that objectively supports" reasonable suspicion or probable cause. *See Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972)). "Rather, 'the cumulative information known to the cooperating officers at the time of the [seizure] is to be considered in determining whether reasonable suspicion [or probable cause] exists.'" *See id.* (citing *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987)); *see also Illinois v. Andreas*, 463 U.S. 765, 771 n.5 (1983) (noting that "where law enforcement authorities are cooperating in an investigation, the knowledge of one is presumed shared by all"); *Woodward v. State*, 668 S.W.2d 337, 344 (Tex. Crim. App. 1984) (op. on reh'g) ("[W]hen there has been some cooperation between law enforcement agencies or between members of the same agency, the sum of the information known to the cooperating agencies or officers at the time of an arrest or search by any of the officers involved is to be considered in determining whether there was sufficient probable cause therefor."). The doctrine applies so long as there is "some degree of communication" between the cooperating officers. *See Woodward*, 668 S.W.2d at 344; *Morgan v. State*,

13

304 S.W.3d 861, 868 (Tex. App.—Amarillo 2010, no pet.); *see also United States v. Zuniga*, 860 F.3d 276, 283 (5th Cir. 2017) ("[T]he collective knowledge theory applies so long as there is 'some degree of communication' between the acting officer and the officer who has knowledge of the necessary facts." (internal citations omitted)).

Here, Sergeant Mauer averred that he had been "contacted by telephone and requested to assist officers with this narcotics investigation," that he "arrived on scene while officers were completing the search of the vehicle," and that the cell phone had been given to him by Wakim, the officer who had initiated the search of the vehicle and the seizure of the cell phone. This evidence, when viewed in the light most favorable to the suppression ruling, supports implied findings by the district court that Mauer and Wakim were cooperating during the narcotics investigation, that both Mauer and Wakim had participated in the seizure of the cell phone, and that there was "some degree of communication" between the officers so as to trigger the applicability of the "collective knowledge" doctrine. *See Derichsweiler*, 348 S.W.3d at 917; *Wiede*, 214 S.W.3d at 26–28; *Astran v. State*, 799 S.W.2d 761, 764 (Tex. Crim. App. 1990); *Woodward*, 668 S.W.2d at 346; *Cook v. State*, 509 S.W.3d 591, 602–03 (Tex. App.—Fort Worth 2016, no pet.); *Williams v. State*, 440 S.W.3d 717, 720 (Tex. App.—Amarillo 2013, pet. ref'd); *Porter v. State*, 969 S.W.2d 60, 65 (Tex. App.—Austin 1998, pet. ref'd). Accordingly, we cannot conclude on this record that the district court erred in determining that the officers had probable cause to seize the cell phone without a warrant.

We next consider whether the record supports the district court's determination that the subsequent search of the phone, pursuant to a warrant, was supported by probable cause. The

14

United States Supreme Court and the Texas Court of Criminal Appeals have held that in most cases, police officers must obtain a warrant before searching a cell phone. *See Riley*, 134 S. Ct. at 2485; *Granville*, 423 S.W.3d at 417. And no search warrant may issue without a sworn affidavit that sets forth facts sufficient to establish probable cause. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9; *see also* Tex. Code Crim. Proc. arts. 1.06, 18.01(b), (c), 18.0215(c)(5). "Ordinarily, the warrant process involves the presentation to a neutral and detached magistrate of an affidavit that establishes probable cause to conduct a search." *Jones v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App. 2012) (citing *Gibbs v. State*, 819 S.W.2d 821, 830 (Tex. Crim. App. 1991)). "Probable cause exists when, under the totality of the circumstances, there is a fair probability or substantial chance that contraband or evidence of a crime will be found at the specified location." *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013) (citing *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010); *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007)); *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). As discussed above, probable cause is a "flexible and non-demanding standard." *Bonds*, 403 S.W.3d at 873; *Rodriguez*, 232 S.W.3d at 60. When reviewing whether a search-warrant affidavit contains sufficient information to establish probable cause, "the test is whether a reasonable reading by the magistrate would lead to the conclusion that the affidavit provided a 'substantial basis for the issuance of the warrant,' thus, 'the magistrate's sole concern should be probability.'" *Rodriguez*, 232 S.W.3d at 60 (quoting *Johnson v. State*, 803 S.W.2d 272, 288 (Tex. Crim. App. 1990)).

"[W]hen the trial court is determining probable cause to support the issuance of a search warrant, there are no credibility determinations, rather the trial court is constrained to the four

15

corners of the affidavit." *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011) (citing *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004)). Similarly, the reviewing court "may look only to the four corners of the affidavit," and we "should view the magistrate's decision to issue the warrant with great deference." *Jones*, 364 S.W.3d at 857. "[W]e apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search." *McClain*, 337 S.W.3d at 271 (citing *Swearingen v. State*, 143 S.W.3d 808, 810–11 (Tex. Crim. App. 2004)). "As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination." *Id*. (citing *Illinois*, 462 U.S. at 236).

Moreover, "[w]e are instructed not to analyze the affidavit in a hyper-technical manner." *Id*. (citing *Gates*, 462 U.S. at 236). Instead, we "should interpret the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences." *Rodriguez*, 232 S.W.3d at 61 (citing *Gates*, 462 U.S. at 240). In other words, "although the magistrate's determination of probable cause must be based on the facts contained within the four corners of the affidavit, the magistrate may use logic and common sense to make inferences based on those facts." *State v. Elrod*, 538 S.W.3d 551, 556 (Tex. Crim. App. 2017). "When in doubt, we defer to all reasonable inferences that the magistrate could have made." *Rodriguez*, 232 S.W.3d at 61. "The inquiry for reviewing courts, including the trial court, is whether there are sufficient facts, coupled with inferences from those facts, to establish a 'fair probability' that evidence of a particular crime will likely be found at a given location." *Id*. at 62. "The issue is not whether there are other facts that could have, or even should have, been included in the affidavit; we focus on the combined

16

logical force of facts that are in the affidavit, not those that are omitted from the affidavit." *Id.*

"Provided the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable-cause determination." *Bonds*, 403 S.W.3d at 873. "Although the reviewing court is not a 'rubber stamp,' 'the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review.'" *Jones*, 364 S.W.3d at 857 (quoting *Flores*, 319 S.W.3d at 702); *see also Elrod*, 538 S.W.3d at 556 ("A magistrate's decision to issue a search warrant is subject to a deferential standard of review, even in close cases.").

In this case, the affidavit in support of the search warrant contained the following information:

- Officer Wakim had initiated a traffic stop on the vehicle occupied by Flowers and King.

- During the stop, Wakim "noted that King appeared very nervous, would not make eye contact with him, and that his hands trembled."

- "When questioned by Officer Wakim about past drug use, Flowers and King both admitted past methamphetamine use to him."

- Wakim "requested and was granted written consent to search the vehicle from Flowers." During that search, officers discovered approximately 234 grams of methamphetamine, "a small amount of mari[h]uana," and drug paraphernalia.

- Wakim informed Mauer that "several baggies" of methamphetamine had been located inside the vehicle, "as well as a large sum of U.S. Currency on King's person," in the amount of $1,371.27.

- "[D]uring his investigation," Wakim had found a cell phone and gave it to Mauer. The cell phone had been "taken from the scene" of the traffic stop, "incident to the arrests of [King] and [Flowers] for the [offense of] Possession of Controlled Substance with Intent to Deliver." "At the time of the investigation,

17

the phone was found to be in the possession of [King] and [Flowers] and was believed to be used by King and Flowers."

- Based on his "numerous prior narcotic investigations," Mauer knew that "narcotic dealers frequently keep baggies, measuring devices such as spoons, and digital scales about their person in order to facilitate narcotics transactions" and that "large sums of U.S. Currency about a person, with the presence of [the above items], suggest that [the currency] is proceeds of narcotics trafficking."

- Based on his involvement "in numerous cases where people were arrested for possessing large amounts of controlled substances," Mauer knew that "[t]ypically, those individuals had cellular telephones on or about their persons when they are arrested" and that those phones "typically" contain evidence of narcotic-related offenses, including contact information of drug buyers and sellers, text messages and emails arranging narcotics transactions, and photographic evidence of narcotics possession.

- Based on his "experience of commonly finding [the above] evidence on the cell phones of persons arrested with large amounts of drugs," Mauer believed that he would "find similar evidence on said seized [cell phone]."

King asserts that the above information "failed to establish a nexus between the phone and criminal activity." In King's view, the affidavit "relied on generalizations about drug possessors but provided no facts indicating that the phone was used in connection with criminal activity."

However, when interpreting the affidavit "in a commonsensical and realistic manner," as we must, *see Rodriguez*, 232 S.W.3d at 61, we conclude that the magistrate could have reasonably inferred that there was at least a "fair probability" that the phone would contain evidence of narcotics trafficking. According to Mauer, approximately 234 grams of methamphetamine, contained in three plastic bags, was found in a satchel inside the vehicle. The magistrate could have reasonably inferred that this was a large quantity of narcotics that had been packaged for sale. Additionally, the methamphetamine was found in the same container as "numerous small plastic baggies, a black

18

digital scale, a small amount of mari[h]uana, measuring spoons, [and] rolling papers," which would support an inference that the occupants of the vehicle were involved in narcotics trafficking. Such an inference would also be supported by other statements in the affidavit, including that King had "appeared very nervous" during the traffic stop, had admitted to past methamphetamine use, and had been found with a large amount of U.S. currency on his person, in an amount over thirteen hundred dollars. Mauer further averred that in his experience investigating narcotics offenses, individuals who are arrested for possessing large amounts of controlled substances "typically" have cell phones "on or about their persons when they are arrested" and that these phones "typically" contain evidence of drug crimes. Although the affidavit did not indicate where, specifically, the cell phone was found, the magistrate could have reasonably inferred that it had been found in the vehicle during the search, because Mauer averred that Wakim had found the phone "during his investigation," that it had been "taken from the scene" of the traffic stop, and that, "[a]t the time of the investigation, the phone was found to be in the possession of [King] and [Flowers] and was believed to be used by King and Flowers." And the magistrate could have further inferred, based on Mauer's experience with cell-phone searches in similar narcotics cases, that there was at least a "fair probability" that the phone found in the vehicle would contain evidence connecting the occupants of that vehicle to the sale or purchase of the large quantity of methamphetamine and drug paraphernalia that was also found in the vehicle.

Again, "[t]he issue is not whether there are other facts that could have, or even should have, been included in the affidavit." *Id*. at 62. Instead, we are to "focus on the combined logical force of facts that are in the affidavit." *Id.* We conclude that the combined logical force of the facts

19

in the affidavit and all reasonable inferences therefrom, particularly the 234 grams of methamphetamine that was found in the vehicle, supports the magistrate's determination that there was probable cause to believe that evidence of a narcotics crime would be found in the cell phone. *See id*. at 62–63 (concluding that reasonable inferences supported probable-cause determination that evidence of narcotics offense would be found at specified location and criticizing intermediate appellate court's "fail[ure] to defer to the reasonable inferences" and its impermissible "focus[] on various facts that the affidavit did not contain, rather than the facts it did contain); *Checo v. State*, 402 S.W.3d 440, 449 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (concluding that magistrate was "within his discretion" in relying on officer's training and experience to make its probable-cause determination and "[a]pplying a high degree of deference to magistrate's determination"); *Arrick v. State*, 107 S.W.3d 710, 717 (Tex. App.—Austin 2003, pet. ref'd) (relying on reasonable inferences to conclude that there was probable cause to believe that murder victim's blood "might be found" in location specified in affidavit); *see also Gates*, 462 U.S. at 246 (explaining that "probable cause does not demand the certainty we associate with formal trials"); *Elrod*, 538 S.W.3d at 560 (observing that reasonable inferences can be "based upon 'certain common-sense conclusions about human behavior . . . [as] understood by those versed in the field of law enforcement" (quoting *Gates*, 462 U.S. at 231–32)). On this record, we cannot conclude that the district court erred in deferring to the magistrate's determination of probable cause.[5] We overrule King's first and third issues.

_____

[5] In arguing that the affidavit did not contain sufficient facts to support the magistrate's probable-cause determination, King cites to this Court's opinion in *State v. Elrod*, 395 S.W.3d 869 (Tex. App.—Austin 2013, no pet.), a child-abuse case in which this Court concluded that the search-warrant affidavit was insufficient to support the magistrate's probable-cause determination. *See id*. at 881–82. However, the affidavit in that case, among other deficiencies, contained "no

**Delay between warrantless seizure of cell phone and its subsequent search**

The record reflects that King's cell phone was seized in July 2015 but that the second search warrant was not issued until March 2017. In his second issue, King asserts that this delay made the seizure unreasonable under the Fourth Amendment,[6] urging that the delay of approximately twenty months was "per se unreasonable."

When law enforcement officers have probable cause to believe that property contains contraband or other evidence of a crime, they are permitted to seize that property, pending issuance of a search warrant. *See Place*, 462 U.S. at 701. However, "a seizure that is reasonable at its inception . . . may become unreasonable as a result of its duration or for other reasons." *Segura v. United States*, 468 U.S. 796, 812 (1984). But there is no "per se rule of unreasonableness" and

---

information . . . about the detective's training and experience, his general knowledge of child abuse crimes, or his familiarity with injuries sustained in such crimes based on his training and experience." *Id*. In contrast, the affidavit here included information on Mauer's training and experience in investigating narcotics offenses, including cases "where people were arrested for possessing large amounts of controlled substances." Mauer averred that based on his experience "of commonly finding [] evidence [of narcotics trafficking] on the cell phones of persons arrested with large amounts of drugs," he believed that he would find "similar evidence on said seized [cell phone]." Thus, unlike in *Elrod*, the affidavit here provided the magistrate with sufficient information to assess the reliability of the affiant's beliefs as to the likelihood that evidence of the crime would be found on the cell phone.

[6] The State asserts that King failed to preserve this issue because he did not raise it in his written motion to suppress. However, the record reflects that King argued during the suppression hearing that the delay between the seizure and search was unreasonable and that the district court considered that argument in its decision to deny the motion to suppress. Accordingly, this issue was preserved for review. *See* Tex. R. App. P. 33.1(a); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016); *see also Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) (explaining that "all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it").

21

"no bright line past which a delay becomes unreasonable." *See McArthur*, 531 U.S. at 331; *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012). Instead, courts "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Place*, 462 U.S. at 703; *Hereford v. State*, 339 S.W.3d 111, 119 (Tex. Crim. App. 2011). Factors to consider in the reasonableness inquiry include: "first, the significance of the interference with the person's possessory interest; second, the duration of the delay; third, whether or not the person consented to the seizure; and fourth, the government's legitimate interest in holding the property as evidence." *United States v. Laist*, 702 F.3d 608, 613–14 (11th Cir. 2012) (internal citations omitted). We must also "take into account whether the police diligently pursue[d] their investigation." *Place*, 462 U.S. at 709. "Despite its fact-sensitive analysis, 'reasonableness' is ultimately a question of substantive Fourth Amendment law." *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). Therefore, "[o]n appeal, the question of whether a specific search or seizure is 'reasonable' under the Fourth Amendment is subject to de novo review." *Id.*

In this case, the delay between the seizure of the phone in July 2015 and the issuance of the second search warrant in March 2017 was approximately twenty months. The State presented no evidence at the suppression hearing to explain that delay.[7] Also, it is undisputed that King did

---

[7] Instead, the State claimed that the delay was "a function of a lot of things that we don't know. We don't know the capabilities of some of our agencies around here to actually go ahead and conduct [the search]. We don't know where we are within the investigation of this case." But the State insisted that, despite the delay, it had a "validly applied for, timely search warrant supported by probable cause." We also note that, although the State failed to explain the delay, there is nothing in the record to suggest that law enforcement, acting "in bad faith, purposely delayed obtaining the warrant." *See Segura v. United States*, 468 U.S. 796, 812 (1984).

not consent to the seizure of his phone. These considerations weigh against a finding of reasonableness. *See Place*, 462 U.S. at 709; *United States v. Mitchell*, 565 F.3d 1347, 1351–52 (11th Cir. 2009). We note, however, that the first warrant was issued in December 2015, less than six months after the seizure of the cell phone, and that King did not challenge the legality of that warrant until January 2017. Under such circumstance, the record supports a finding that there would be no reason for the State to obtain a new warrant prior to that time. Additionally, the State presented evidence tending to show that the cell phone was found in the same vehicle as approximately 234 grams of methamphetamine, which provided law enforcement with probable cause to believe that the cell phone contained evidence of narcotics trafficking. Moreover, the record reflects that King was in jail for almost the entire time his phone was seized (with the exception of two months when King had been released on bail and placed under house arrest), and King presented no evidence at the suppression hearing tending to show that he had sought the return of the phone during that time or that being deprived of the phone adversely affected him in any manner. *See McArthur*, 531 U.S. at 331 (no "per se rule of unreasonableness" in the context of seizures of property that are supported by probable cause). These considerations weigh in favor of a finding that the delay was reasonable. *See id*. at 331–32 (concluding that seizure was reasonable because, among other reasons, police had probable cause to believe that property contained evidence of unlawful drugs); *United States v. Johns*, 469 U.S. 478, 487 (1985) (observing that when defendants "never sought return of the property," this weighed against finding "that the delay in the search of [the seized property] adversely affected legitimate interests protected by the Fourth Amendment"); *Segura*, 468 U.S. at 813 (concluding that when defendants "were under arrest and in the custody of the police throughout

23

the entire period" that property was seized, "[t]he actual interference with their possessory interests in the [property] and its contents was, thus, virtually nonexistent"); *Orosco v. State*, No. 03-15-00383-CR, 2017 Tex. App. LEXIS 6111, at *21–22 (Tex. App.—Austin June 29, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding that "the State's interest in seizing the phone was strong because the State had probable cause to believe that the phone contained evidence" connecting defendant to charged offense); *see also United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015) ("Where individuals are incarcerated and cannot make use of seized property, their possessory interest in that property is reduced."); *Burgard*, 675 F.3d at 1033 ("The state has a stronger interest in seizures made on the basis of probable cause than in those resting only on reasonable suspicion. All else being equal, the Fourth Amendment will tolerate greater delays after probable-cause seizures."); *United States v. Clutter*, 674 F.3d 980, 984–85 (8th Cir. 2012) (concluding that seizure of defendant's computers while he was in jail "did not meaningfully interfere with his possessory interests"); *United States v. Stabile*, 633 F.3d 219, 235–36 (3d Cir. 2011) (concluding that defendant's failure to ask for return of his hard drives until eighteen months after initial seizure of property weighed against finding that delay was unreasonable). *Cf. Burgard*, 675 F.3d at 1034 (observing that "checking on the status of the seizure or looking for assurances that the item would be returned" provides "some evidence" that seizure affected defendant's possessory interests).

In summary, the record supports findings that the duration of the delay, the State's failure to explain that delay, and the absence of consent to the seizure weigh against a determination that the delay was reasonable. However, the record also supports findings that the State had a

24

legitimate interest in retaining possession of the phone and that any interference with King's

possessory interest in the phone was minimal.[8]  On this record, we cannot conclude that the district

court erred in determining that the balance of interests weighed in favor of the State and in failing

to find that the delay in obtaining a search warrant made the seizure unreasonable.  *See McArthur*,

531 U.S. at 331–34.  We overrule King's second issue.

**The independent-source doctrine and *Franks v. Delaware***

In his fourth issue, King asserts that, "[b]ecause the State conceded that the first

search was unlawful," the district court erred in failing to hold an evidentiary hearing to determine

if "the second [search] warrant was based on a source independent from the fruits of the first search."

King further asserts that the district court also should have held a *Franks* hearing to determine if the

second search-warrant affidavit contained false or deceptive statements.  *Franks*, 438 U.S. at 155–56.

---

[8]  In his reply brief, King claims that "prisoners retain a possessory interest in their personal property," citing to *State v. Granville*, 423 S.W.3d 399 (Tex. Crim. App. 2014).  However, the sole issue in *Granville* was "whether a person retains a legitimate expectation of *privacy* in the contents of his cell phone when that phone is being temporarily stored in a jail property room." *Id*. at 402 (emphasis added).  The court held that "a citizen does not lose his reasonable expectation of privacy in the contents of his cell phone merely because that cell phone is being stored in a jail property room." *Id*. at 417.  *Granville* did not address the scope of a prisoner's possessory interest in a seized cell phone and is thus not applicable to the issue here.  *See Segura*, 468 U.S. at 806 ("A seizure affects only the person's possessory interests; a search affects a person's privacy interests."); *Burgard*, 675 F.3d at 1033 ("On the individual person's side of this balance, the critical question relates to any possessory interest in the seized object, not to privacy or liberty interests."); *see also Orosco v. State*, No. 03-15-00383-CR, 2017 Tex. App. LEXIS 6111, at *21 (Tex. App.—Austin June 29, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding that defendant's "privacy interests in the contents of his cell phone were not infringed" during delay in obtaining search warrant "because no search was performed until after a search warrant was obtained").

Initially, we observe that, contrary to King's assertion, at no point during the suppression hearing did the State "concede" that the first search was unlawful. Instead, the State indicated at the hearing that it would "proceed[] on the second search warrant without any regard to what happened in the first search warrant" and that it "intend[ed] to offer evidence obtained as a result of the search of the LG phone in question that was done pursuant to the second search warrant." These statements do not rise to the level of "conceding" the illegality of the first search. Nevertheless, in its argument on appeal, the State "assume[s], without conceding, that law enforcement's initial search of the cell phone herein was illegal." For purposes of our analysis, we will similarly assume, without deciding, that the first search was unlawful.

"[T]he federal exclusionary rule generally requires suppression of both primary evidence obtained as a direct result of an illegal search or seizure, as well as derivative evidence acquired as an indirect result of unlawful conduct." *Wehrenberg v. State*, 416 S.W.3d 458, 464 (Tex. Crim. App. 2013) (citing *Segura*, 468 U.S. at 804). However, there are several exceptions to this rule, including the "independent source" doctrine. *Id.* "At its core, the independent source doctrine provides that evidence derived from or obtained from a lawful source, separate and apart from any illegal conduct by law enforcement, is not subject to exclusion." *Id*. at 465 (citing *Murray v. United States*, 487 U.S. 533, 537 (1988); *Nix v. Williams*, 467 U.S. 431, 443 (1984)). In other words, "notwithstanding a prior instance of unlawful police conduct, evidence actually discovered and obtained pursuant to a valid search warrant is not subject to suppression, so long as the police would have sought the warrant regardless of any observations made during the illegal [conduct]." *Id*. at 465–66 (citing *Segura*, 468 U.S. at 799, 813–15). "Thus, in determining whether challenged

26

evidence is admissible under the independent source doctrine, the central question is 'whether the evidence at issue was obtained by independent legal means.'" *Id*. at 465 (quoting *United States v. May*, 214 F.3d 900, 906 (7th Cir. 2000)).

In this case, the record supports an implied finding by the district court that the second search was independent from the first. At the hearing on the motion to suppress, both the first and second search-warrant affidavits were admitted into evidence. Each affidavit was prepared by a different officer with the Cedar Park Police Department. The first affidavit was prepared by Detective Jason LeMond, who provided no information in the affidavit indicating that he had participated in the search of the vehicle or the subsequent seizure of the cell phone. The second affidavit, submitted to the magistrate over 14 months after the first, was prepared by Sergeant William Mauer, who averred that he was "contacted by telephone and requested to assist officers with this narcotics investigation," that he "arrived on scene while officers were completing the search of the vehicle," and that the cell phone had been given to him at the scene by Officer Wakim, the officer who had initiated the search of the vehicle. Mauer also averred that Wakim had told him that "several baggies of what he believed to be methamphetamine had been located in the vehicle, as well as a large sum of U.S. currency on King's person." This evidence supports findings by the district court that Mauer was at the scene of the narcotics investigation and that he was made aware, at that time, of the facts that provided the officers with probable cause to believe that the phone would contain evidence of narcotics trafficking. The district court could have reasonably inferred from this evidence that Mauer's knowledge of the facts that gave rise to probable cause was independent of any results from the first search of the phone that occurred months later.

27

Moreover, as the State argued at the hearing, there was no reference in Mauer's affidavit to the first search of the phone or the results from that search. Instead, Mauer stated in the affidavit that the basis for his belief that the cell phone would contain evidence of a drug crime was his training and experience investigating narcotics offenses. The district court would not have abused its discretion in crediting Mauer's statements and in finding that this training and experience, combined with Mauer's participation in the narcotics investigation that led to the discovery of the cell phone, provided an independent legal basis for the second search warrant. Thus, even assuming that the first search was unlawful, we cannot conclude on this record that the district court erred in determining that the results from the second search of the phone were admissible under the independent-source doctrine. *See Murray*, 487 U.S. at 535–36, 541–42; *Segura*, 468 U.S. at 813–16; *see also United States v. Runyan*, 290 F.3d 223, 235–37 (5th Cir. 2002).

Finally, we address King's claim that he was entitled to a *Franks v. Delaware* hearing. 438 U.S. at 155–56. "Under *Franks*, a defendant who makes a substantial preliminary showing that a false statement was made in a warrant affidavit knowingly and intentionally, or with reckless disregard for the truth, may be entitled by the Fourth Amendment to a hearing, upon the defendant's request." *Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007). "This hearing is required only where the false statement is essential to the probable cause finding." *Id.* "If at the hearing the defendant establishes the allegation of perjury or reckless disregard by a preponderance of the evidence, the affidavit's false material is set aside." *Id.* "If the remaining content of the affidavit does not then still establish sufficient probable cause, the search warrant must be voided and the evidence resulting from that search excluded." *Id.*

"[I]n order to be granted a *Franks* hearing, a defendant must: (1) [a]llege deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the portion of the affidavit claimed to be false; (2) accompany these allegations with an offer of proof stating the supporting reasons; and (3) show that when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support issuance of the warrant." *Id*. (citing *Cates v. State*, 120 S.W.3d 352, 356 (Tex. Crim. App. 2003)). "Thus, specific allegations and evidence must be apparent in the pleadings in order for a trial court to even entertain a *Franks* proceeding." *Id.* We review a trial court's refusal to hold a *Franks* hearing for abuse of discretion. *See Cates*, 120 S.W.3d at 354.

In his motion to suppress, King asserted that the following statement in the affidavit was either intentionally false or made with a reckless disregard for the truth: "At the time of the investigation, the phone was found to be in the possession of [King] and [Flowers] and was believed to be used by King and Flowers." King claimed that a video recording of the vehicle search "and other evidence" would show that King was not in possession of the cell phone. However, at the suppression hearing, King made no offer of proof as to what the recording would show or what the "other evidence" would demonstrate, other than making a vague assertion that the evidence would enable the district court to determine "who actually possessed the cell phone, who actually owned the cell phone, and where the cell phone was found." Moreover, although King alluded to possible testimony by Sergeant Mauer and Officer Wakim, he failed to provide the district court with any details as to the nature of that testimony or any information to suggest that their testimony might reveal that the challenged statement was either intentionally false or made with a reckless disregard

29

for the truth. On this record, we cannot conclude that the district court abused its discretion in refusing King's request to hold a *Franks* hearing. *See Franks*, 438 U.S. at 171 ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."). We overrule King's fourth issue.

**Modification of judgment**

In his fifth issue, King contends that the judgment of conviction should be modified to correct an erroneous description of the crime for which he was convicted. The record reflects that King was charged with and convicted of the offense of possession of a controlled substance with intent to deliver. However, the judgment of conviction indicates that King was convicted of the offense of *manufacture* of a controlled substance with intent to deliver. The State concedes that this description of the offense is erroneous, and we agree that it is. This Court has the authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). We sustain King's fifth issue.

## CONCLUSION

We modify the judgment of conviction to reflect that King was convicted of the offense of possession of a controlled substance with intent to deliver. As modified, we affirm the judgment of the district court.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Modified and, as Modified, Affirmed

Filed:  November 2, 2018

Do Not Publish